UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12538-PBS

PAUL DELEO, JR., THOMAS BARRETT,
MICHAEL CONEELY, MATTHEW HOGARDT,
BRENDAN DEVER, PATRICK ROGERS,
CHRISTOPHER CARR, and BRIAN DUNFORD,
    Plaintiffs,

v.

CITY OF BOSTON, Massachusetts, MITT
ROMNEY, in his capacity as Governor of the
Commonwealth of Massachusetts; and the
COMMONWEALTH OF MASSACHUSETTS,

    Defendants,

BOSTON BRANCH OF THE NATIONAL
ASSOCIATION FOR THE ADVANCEMENT
OF COLORED PEOPLE and
MASSACHUSETTS ASSOCIATION OF
MINORITY LAW ENFORCEMENT
OFFICERS,
    Intervenors.

## DEFENDANT CITY OF BOSTON'S MOTION TO STAY PROCEEDINGS AND MEMORANDUM IN SUPPORT THEREOF

Now comes the Defendant City of Boston ("City Defendant") in the above-captioned action and moves this Honorable Court to stay all proceedings in the above-captioned case.

In support of this Motion, the City Defendant states as follows:

1. This case was initiated on December 17, 2003, against the City of Boston ("City Defendant"), the Commonwealth of Massachusetts and Mitt Romney ("State Defendants").[1]

2. The Plaintiffs allege that the Defendants' hiring process is a violation of 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et. seq., and M.G.L. c.151B, §4.

3. Plaintiffs' Complaint was answered by the City Defendant on March 31, 2004, and by the State Defendants on April 28, 2004.

4. On the May 11, 2004, the City Defendant filed a *Motion For Clarification of Consent Decree* and supporting *Memorandum* ("Exhibit A"), together with a *Motion To Expedite.* ("Exhibit B").

5. The following issue is sought to be clarified by the City Defendant: Is the complement of minorities for purposes of parity to be calculated by: (1) comparing the percentage of minority entry-level patrolmen to the percentage of minorities in the City of Boston's general population; or (2) comparing the percentage of minorities in the entire police force, including entry-level patrolmen as well as officers, to the percentage of minorities in the City of Boston's general population?

6. The issue upon which clarification is sought will determine the rights and/or liabilities of the parties in this action.

7. A District Court has broad discretion to stay proceedings as incident to its power to control its own docket. Clinton v. Jones, 520 U.S. 681, (1997)

---

[1] A Stipulation of Dismissal was filed on March 31, 2004 as to Defendants Thomas Menino and Kathleen O'Toole. An *Assented To Motion To Intervene By The Boston Branch Of The National Association For The Advancement Of Colored People And The Massachusetts Association Of Minority Law Enforcement Officers* was allowed on May 6, 2004.

8. Issuing a Stay in the above-captioned case until the Court decides on the City Defendant's *Motion For Clarification* conserves time, expense, and judicial resources, since a decision will obviate the need for further, protracted litigation.

**WHEREFORE,** Defendant City of Boston requests that this Court STAY all proceedings in the above-captioned case pending a response to the City's *Motion For Clarification.*

        Respectfully submitted,

        DEFENDANT CITY OF BOSTON
        Merita A. Hopkins
        Corporation Counsel, City of Boston
        By its attorney,

        S/Stephen G. Cox
        _____
        Stephen G. Cox,  BBO# 566943
        Assistant Corporation Counsel
        City of Boston Law Department
        Room 615, Boston City Hall
        Boston, Massachusetts 02201
        (617) 635-4064
        Stephen.Cox@cityofboston.gov

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

I, Stephen G. Cox, attorney for the Defendant City of Boston in the above captioned matter, herby certify that on May 7, 10, and 11th, 2004, I conferred with a counsel of record for each party regarding the subject of the within motion and that we attempted in good faith to resolve or narrow the issues raised by the instant motion.

        S/Stephen G. Cox
        _____
        Stephen G. Cox

# *EXHIBIT A*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.   70-1220-W
74-2982-C

PEDRO CASTRO et al.,
    Plaintiffs,

v.

NANCY BEECHER et al.,
    Defendants.

### DEFENDANT CITY OF BOSTON'S
### MOTION FOR CLARIFICATION OF CONSENT DECREE[2]

Now comes the Defendant City of Boston and moves this Honorable Court for clarification of the consent decree in the above case.  As reasons for this Motion, the Defendant states that because of the decision in Quinn v. City of Boston, 325 F.3d 18 (1st Cir. 2003), clarifying the method for measuring parity is necessary to ensure that hiring is in conformity with the decree and in conformity with 42 U.S.C. §1983 pursuant to the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et. seq., and M.G.L. c.151B, §4.  In further support of this Motion, the Defendant submits the attached Memorandum of Law.

**WHEREFORE,** Defendant City of Boston requests that this Court clarify the consent decree in the above case.

---

[2] This Motion is filed together with a *Motion to Expedite Consideration.*

        Respectfully submitted,

        DEFENDANT CITY OF BOSTON
        Merita A. Hopkins
        Corporation Counsel, City of Boston
        By its attorney,


        S/Stephen G. Cox
        _____
        Stephen G. Cox,  BBO# 566943
        Assistant Corporation Counsel
        City of Boston Law Department
        Room 615, Boston City Hall
        Boston, Massachusetts 02201
        (617) 635-4064
        Stephen.Cox@cityofboston.gov


Dated:  May 11, 2004

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.   70-1220-W
74-2982-C

PEDRO CASTRO et al.,
    Plaintiffs,

v.

NANCY BEECHER et al.,
    Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANT CITY OF BOSTON'S
MOTION FOR CLARIFICATION OF CONSENT DECREE**

**I.     SUMMARY OF THE ISSUE FOR CLARIFICATION**

The City of Boston hires police candidates pursuant to a consent decree that applies to all cities and towns with a minority population of one percent or more until such city or town achieves a complement of minorities commensurate with the percentage of minorities within the community.  See Castro v. Beecher, 365 F. Supp. 655 (D.Mass.1973); Castro v. Beecher, 522 F. Supp. 873, 875 (1981).

Is the complement of minorities for purposes of parity to be calculated by: (1) comparing the percentage of minority entry-level patrolmen to the percentage of minorities in the City of Boston's general population; or (2) comparing the percentage of minorities in the entire police force, including entry-level patrolmen as well as officers, to the percentage of minorities in the City of Boston's general population?

To date, the City of Boston has calculated parity by comparing the percentage of minorities in the entire police force.  However, the decision in Quinn v. City of Boston, 325 F.3d 18 (1st Cir. 2003) may suggest that the proper method of calculation is to

compare the percentage of minority entry-level patrolmen.  This Motion seeks a resolution of this issue.

## II.     THE CASTRO DECREE

The original case, above-captioned Docket No. 70-1220-W, began in 1970 on a complaint alleging that the defendants discriminated against blacks and Spanish-surnamed persons in the recruitment and appointment of policemen.[3]  Castro v. Beecher, 334 F. Supp. 930, 934 (D.Mass.1971).  Although the District Court found that the examinations given in 1968-1970 discriminated against minorities that did not share the prevailing white culture, it declined to grant preferential hiring to black and Spanish-surnamed applicants who had been the victims of the discrimination.  Id. at 939-940; see also Castro v. Beecher, 386 F. Supp. 1281, 1283 (D.Mass.1975).   On appeal the Court held that the Civil Service examinations in question were racially discriminatory and remanded the case with instructions that minority group persons who had been the victims of the discrimination be hired on a priority basis, provided they pass a non-discriminatory, job-related examination.  Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972); Castro, 386 F.Supp. at 1283.  On remand, the Court approved and entered a consent decree.  Castro, 365 F. Supp. at 655.  The decree provided, among other measures, for the establishment of civil service certification priority pools consisting of certain black and Spanish-surnamed applicants, and for the implementation of affirmative recruitment programs for the purpose of recruiting black and Spanish-surnamed police applicants.  Id. at 660.

---

[3] As noted by the Court in Quinn v. City of Boston, 325 F.3d 18, 24 n.1 (1st Cir. 2003), throughout the litigation relating to consent decrees, the parties have used the term "blacks" as opposed to "African Americans."  For historical coherence the Court adhered to that usage, and the Defendant does the same in this Motion.

In 1974 plaintiffs brought an action, above-captioned Docket No. 74-2982-C, pursuant to the All Writs Act for the purpose of clarifying and preserving the effect of the prior consent decree in light of proceedings that had taken place in the Massachusetts Superior and Supreme Judicial Courts.  See  Castro v. Beecher, 386 F. Supp. 1281 (D.Mass.1975).  The Court, finding that some aspects of the decree went beyond the relief mandated by the Court of Appeals and possessed potential constitutional deficiencies, ordered that the parties arrive at a substitute consent decree, and recommended the remedy adopted in NAACP v. Beecher, 371 F. Supp. 507 (D.Mass.), aff'd, 504 F.2d 1017 (1st Cir. 1975).[4]  Thereafter the two above-captioned cases were consolidated and the parties entered into a consent decree.  The decree was approved and entered by the Court on July 7, 1975 ("the Castro decree").

Among other things, the Castro decree provided that the method and ratios of certification provided for by the decree shall apply to all cities and towns which have a minority population of one percent or more until any such city or town achieves a complement of minorities commensurate with the percentage of minorities within the community, at which point further certification was to be made in accordance with existing Massachusetts law.  Castro, 522 F. Supp. at 875.  This parity target had been established by the Court in the Beecher decree.[5]  Id.

---

[4] The NAACP v. Beecher consent decree (subsequently referred to as the "Beecher decree") followed a ruling in 1974 that the Fire Fighter Entrance Examination used by the Massachusetts Division of Civil Service to screen candidate firefighters had historically discriminated against black and Hispanic applicants.  Quinn v. City of Boston, 204 F.Supp.2d 156, 158 (2002). The Court ordered that any future examination be validated under EEOC guidelines, and that preferential hiring procedures be introduced to rectify the effects of past discrimination.  Boston Chapter, NAACP, Inc., 371 F. Supp. at 521.

[5] The "Beecher decree" is a phrase that includes the original decree and subsequent orders entered to fine-tune it. Quinn, 325 F.3d at 24.  Similarly, as used in this Motion, the phrase "Castro decree" includes the original decree and subsequent agreements and supplements.  The substance of these agreements and supplements are not relevant to the clarification requested by this Motion.

### III.   THE BASIS FOR REQUESTING CLARIFICATION OF THE CASTRO DECREE.

In the recent case of Quinn v. City of Boston, the First Circuit addressed the issue of parity under the Beecher decree. 325 F.3d at 18. The Plaintiff candidates in Quinn were bypassed by the Boston Fire Department and brought suit alleging that the City had discriminated against them on the basis of race. The District Court granted summary judgment to the defendants. Quinn, 204 F.Supp.2d at 163.

On appeal, the First Circuit identified the central issue as the meaning of parity and the manner in which it is to be calculated. Quinn, 325 F.3d at 28. Although the parties in Quinn agreed on the relevant time frame, as well as the sources of data, they disagreed on how the minority penetration in a particular fire department was to be measured, an issue that turned on the interpretation of the term "firefighter." Id. The candidates viewed the term "firefighter" as encompassing only the lowest rank, that is, entry-level members of the Boston Fire Department.[6] Id. at 30. The defendants viewed the term "firefighter" as encompassing all uniformed Boston Fire Department personnel, including officers. Id. The City of Boston considered its method of calculation consistent with precedent. See, e.g. NAACP v. Beecher, 371 F.Supp. at 523 ("Where, however, the policy has in effect resulted in the exclusion of minorities from the fire department, the policy must be changed and present effects of past discrimination must be remedied."); Id. at 523 ("As a city or town achieves a complement of minorities commensurate with the percentage of minorities within the community, certifications will be made according to existing Massachusetts law."); Boston Chapter, NAACP, Inc. v. Beecher, No. 72-3060-F, slip op. at 6 (D. Mass. Nov. 25, 1975)("No fire department . . .

---

[6] The Court pointed out that throughout its decision, all references to "entry-level" positions were to be understood as meaning post-probationary non-officer positions. Id.

may be exempted . . . unless the appointing authority has first petitioned the Division that the percentage of post-probationary minority uniformed personnel equals the percentage of minorities in the city or town served by said department . . . .").

The Court, however, held that the proper parity-measuring device comprises the percentage of minorities in the entry-level rank only of the Boston Fire Department.  Id. at 35.

To date, the City of Boston has also calculated parity in the Police Department by comparing the percentage of minorities in the entire police force.  The City has considered its method of calculation consistent with precedent.  See, e.g. Castro, 365 F.Supp. 655 at 660 (the court originally stated "finding that the Proposed Decree is just, reasonable, and in the public interest, and more likely than any other proposed solution to give the people of the Commonwealth of Massachusetts effective, non-discriminatory, dedicated, and honorable police forces, the proposed decree is approved and entered…"); Castro, 459 F.2d at 737 (in deciding on the appropriateness that an appointing authority remain a party upon remand, the Appeals Court recognized that "the record amply demonstrates [the Boston Commissioner of Police's] willingness to assist in all efforts to achieve a wider racial and cultural representation on his force."); Castro, 334 F.Supp. at 935 (when considering statistics, the Court observed that, as compared to the population, "in the Boston police force the blacks were only about 2% in 1960 and about 3.6% in 1970"); Id. at 936 ("when blacks are one-sixth of the Boston population they are only one-thirtieth of the Boston police force."); Id. at 949 (discussing how to produce "a police force with 15% wholly qualified blacks"); 522 F.Supp. at 876 ( "…the minority population of Boston has increased during the intervening decade to 30 percent.  The

percentage of black and Hispanic officers in the Police Department, therefore, remains far below the percentage of minorities in the city and the parity level which the Court's prior remedial orders were designed to achieve.").

The City of Boston's Police Department now seeks to measure whether parity has been achieved under the Castro decree. In light of the Court's decision in <u>Quinn</u>, it is unable to determine the proper method for measuring parity, and thus seeks the following clarification:

Is the complement of minorities to be calculated by: (1) comparing the percentage of minority <u>entry-level</u> patrolmen to the percentage of minorities in the City of Boston's general population; or (2) comparing the percentage of minorities in the <u>entire police force</u>, including entry-level patrolmen as well as officers, to the percentage of minorities in the City of Boston's general population?

        Respectfully submitted,

        DEFENDANT CITY OF BOSTON
        Merita A. Hopkins
        Corporation Counsel, City of Boston
        By its attorney,

        S/Stephen G. Cox
        _____
        Stephen G. Cox, BBO# 566943
        Assistant Corporation Counsel
        City of Boston Law Department
        Room 615, Boston City Hall
        Boston, Massachusetts 02201
        (617) 635-4064
        Stephen.Cox@cityofboston.gov

Dated: May 11, 2004

# *EXHIBIT B*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.   70-1220-W
74-2982-C

PEDRO CASTRO et al.,
    Plaintiffs,

v.

NANCY BEECHER et al.,
    Defendants.

**DEFENDANT CITY OF BOSTON'S
MOTION TO EXPEDITE CONSIDERATION OF
ITS MOTION FOR CLARIFICATION OF CONSENT DECREE
AND MEMORANDUM IN SUPPORT THEREOF**

Now comes the Defendant City of Boston ("Defendant") and moves this Honorable Court to expedite its consideration of the Defendant's *Motion For Clarification of Consent Decree* in the above case.

As reasons for this Motion, the Defendant states as follows:

1.    The Defendant is currently screening candidates and preparing to make appointments for a new Police Academy class.

2.    The process by which the Defendant ultimately appoints entry-level police officers is controlled by the "Castro decree."[7]

3.    A clarification from the Court on the issue posed by the Defendant will determine whether or not the Castro decree controls the City of Boston's hiring practices.

4.    There is a substantial public interest attached to the expeditious resolution of whether or not the Castro decree controls the City of Boston's hiring practices,

---

[7] As used in this Motion, the "Castro decree" includes the original decree entered in Castro v. Beecher, 365 F. Supp. 655 (D.Mass.1973), as well as subsequent agreements and supplements. The substance of these agreements and supplements are not relevant to the clarification requested.

particularly since hiring is ongoing. Quinn v. City of Boston, 325 F.3d 18, 27 (1st Cir. 2003); see also Quinn v. City of Boston, 204 F.Supp.2d 156, 157 n.3 (2002).

   3. Expedited consideration of the Defendant's *Motion For Clarification* will ensure that hiring is in conformity with the Castro decree.

   4. Expedited consideration of the Defendant's *Motion For Clarification* will ensure that hiring is in conformity with 42 U.S.C. §1983 pursuant to the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et. seq., and M.G.L. c.151B, §4, and thus limit the City's potential liability in the currently pending case of DeLeo et al. v. City of Boston et al., Civil Action No. 03-12538-PBS, which directly challenges the process by which the Defendant appoints police officers under the Castro decree.

   5. Expediting consideration of the Defendant's *Motion For Clarification* will conserve time, expense, and judicial resources, in that a clarification will determine the rights and/or liabilities of the parties in DeLeo et al. v. City of Boston et al. and obviate the need for further, protracted litigation.

   ***WHEREFORE,*** Defendant City of Boston requests that this Court EXPEDITE the consideration of its *Motion For Clarification of Consent Decree.*

        Respectfully submitted,

        DEFENDANT CITY OF BOSTON
        Merita A. Hopkins
        Corporation Counsel, City of Boston
        By its attorney,


        S/Stephen G. Cox
        _____
        Stephen G. Cox,  BBO# 566943
        Assistant Corporation Counsel
        City of Boston Law Department
        Room 615, Boston City Hall
        Boston, Massachusetts 02201
        (617) 635-4064
        Stephen.Cox@cityofboston.gov


Dated:  May 11, 2004