UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL DELEO, JR., THOMAS BARRETT, MICHAEL CONNEELY, MATTHEW HOGARDT, BRENDAN DEVER, PATRICK ROGERS, CHRISTOPHER CARR, and BRIAN DUNFORD,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BOSTON, Massachusetts, MITT ROMNEY, in his Capacity as Governor of the Commonwealth of Massachusetts, and the COMMONWEALTH OF MASSACHUSETTS,<br><br>Defendants,<br><br>BOSTON BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE AND MASSACHUSETTS ASSOCIATION OF MINORITY LAW ENFORCEMENT OFFICERS,<br><br>Intervenors. | Civil Action No. 03-12538-PBS<br><br>**REQUEST FOR ORAL ARGUMENT** |

## INTERVENORS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Intervenors Boston Branch of the National Association for the Advancement of Colored People ("NAACP") and Massachusetts Association of Minority Law Enforcement Officers ("MAMLEO") (collectively, the "Intervenors") submit this memorandum in opposition to Plaintiffs' Motion for Protective Order, which seeks to block Intervenors from conducting short depositions of the named plaintiffs on the discrete issue of standing. As set forth below, there is a substantial question whether Plaintiffs have standing to bring this case. The depositions will be limited in time and scope, will impose no meaningful burden on Plaintiffs, and will seek testimony directly relevant to the issue of standing – an issue properly raised at this point in the

litigation, irrespective of the parties' Joint Statement bifurcating liability and damages. Accordingly, Intervenors respectfully request that the Court deny Plaintiffs' Motion for Protective Order, and further that the Court defer any consideration of the motion for preliminary injunction that Plaintiffs are scheduled to file today until Intervenors have conducted the noticed depositions.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs in this action challenge the Boston Police Department's method of hiring entry-level police officers pursuant to the Consent Decree in Castro v. Beecher, and are today scheduled to file a motion for a preliminary injunction barring the use of that hiring method.

On May 27, 2004, the parties filed a Joint Statement in which they agreed to bifurcate the liability and damages phases of the case, but in no way limited the discovery that could occur on the threshold (and potentially case dispositive) issue of standing.

On June 18, 2004, Intervenors noticed the depositions of the eight named plaintiffs. The depositions were each scheduled to be two to three hours long, and to occur seriatim on July 7, 8, and 9.

On June 22, 2004, at a deposition that Plaintiffs had noticed of a witness from the City of Boston, counsel for Plaintiffs told counsel for Intervenors that he would not voluntarily make available any of the Plaintiffs for their depositions and would instead seek a protective order. Counsel for Intervenors assured counsel for Plaintiffs that the depositions would be short and that questioning would be limited to the issue of standing, including whether the Plaintiffs meet the age, residency, and other qualifications for appointment to the Boston Police Department.

On the same day, counsel for Plaintiffs sent a letter to counsel for Intervenors in which he reiterated that he would not produce Plaintiffs for their depositions and would instead seek a protective order. By way of justification, he stated: "Because the issue of liability has been

bifurcated from the issue of remedy, we do not see the relevance of or need for taking depositions from the plaintiffs in this matter, as these witnesses have no information tending to establish liability or lack thereof."

Plaintiffs subsequently filed their motion for protective order on July 1, 2004.

## ARGUMENT

### I. PLAINTIFFS CANNOT DEMONSTRATE ANY "EXTRAORDINARY CIRCUMSTANCES" TO WARRANT ENTRY OF A PROTECTIVE ORDER BLOCKING THEIR DEPOSITIONS.

As is well recognized, "[p]rohibiting the taking of depositions is an extraordinary measure." Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998) (collecting cases) (Gertner, J.). "[T]he complete prohibition of a deposition . . . should be resorted to only in rare occasions." Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001) (internal quotations omitted). As such, "it is exceedingly difficult [for the moving party] to demonstrate an appropriate basis for an order barring the taking of a deposition." Naftchi v. N.Y. Univ. Med. Ctr., 172 F.R.D. 130, 132 (S.D.N.Y. 1997). Neither the bifurcation agreement nor the specific facts of this case justifies the extraordinary measure of prohibiting the Intervenors from taking depositions, especially where those depositions relate to a potentially case dispositive matter.

To obtain a protective order prohibiting deposition testimony, Plaintiffs must satisfy their "heavy burden of showing 'extraordinary circumstances' based on 'specific facts.'" Prozina Shipping, 179 F.R.D. at 48. Plaintiffs have not met their burden, and cannot demonstrate extraordinary circumstances necessary to obtain the protective order they seek. Plaintiffs' bald assertion that the depositions would "annoy, oppress and burden the Plaintiffs and their counsel" is insufficient to support their motion for a protective order. See id. (citing Frideres v. Schlitz,

150 F.R.D. 153, 156 (S.D. Iowa 1993) (conclusory statements insufficient to support a motion for a protective order)).

## II. A SUBSTANTIAL QUESTION EXISTS WHETHER THE PLAINTIFFS HAVE STANDING.

Standing is jurisdictional and not subject to waiver. United States v. Hays, 515 U.S. 737, 742, (1995). Because standing is grounded in the case-or-controversy requirement of Article III of the United States Constitution, *it is a threshold issue in all cases.* See Donahue v. City of Boston (Donahue I), 304 F.3d 110, 115 (1st Cir. 2002); Town of Norwood v. FERC, 202 F.3d 392, 405 (1st Cir. 2000). Before the Court can decide this case on the merits, Plaintiffs' standing, or lack thereof, "must be considered and rejected." Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 281 n.14 (1978).

Contrary to the suggestion made in the Affidavit of Alfred Gordon, attached to Plaintiffs' Memorandum as Exhibit K ("Gordon Affidavit"), Plaintiffs possess information relevant to the threshold issue of standing. Without offering any proof, the Gordon Affidavit simply assumes that Plaintiffs were entitled to be appointed to the Boston Police Department by virtue of their place on the City's civil service eligibility list ("certification list"), and therefore have standing to bring their claims. In fact, Plaintiffs' position on the certification list depends upon issues such as their domicile, age, and education.[1] Other similar cases challenging the Boston Police Department's method of hiring entry-level police officers have been dismissed for lack of standing because the plaintiffs could not satisfy these threshold requirements. See e.g., Donahue v. City of Boston (Donahue II), 371 F.3d 7, 13-14 (1st Cir. 2004) (affirming summary judgment in favor of City of Boston on grounds that plaintiff lacked standing to challenge Castro consent decree due to operation of Massachusetts statute prohibiting hiring of police officers over age

---

[1] There are other issues relevant to whether Plaintiffs would in fact have been appointed to the Boston Police Department, including their medical condition, whether they used drugs or had criminal convictions, among other factors.

32). The relief sought by Plaintiffs' motion would have the effect of shielding the standing issue from the Court's scrutiny. Intervenors are entitled to elicit from Plaintiffs information related to standing, which, as demonstrated below, Intervenors cannot derive from documents alone.

### A. Plaintiffs' Self-Identified Residency Is Fundamental To Standing.

Massachusetts General Law Chapter 31, Section 58, which is entitled "Municipal police officers and firefighters; qualification," sets forth eligibility requirements for applicants seeking appointment to the police force, such as required age and education. Although the statute does not require an applicant to reside in a specific municipality, it gives applicants who are residents of the municipality for which they are applying a distinct advantage over non-residents. The statute provides that "the administrator shall, when certifying names from said eligible list for original appointment to the police force . . . place the names of all persons who have resided in said city or town for one year immediately prior to the date of examination *ahead of any person who has not so resided.*" M.G.L. c. 31, § 58 (emphasis supplied).

Under this statutory scheme, Plaintiffs would have been reached for consideration for appointment to the Boston Police Department under a race-neutral system *only because* they self-identified as residents of Boston, thereby putting themselves ahead of all non-Boston residents. (See Certification List dated August 5, 2002 at 11-19, attached hereto as Exhibit 1.) If Plaintiffs were not actually domiciled in Boston, Plaintiffs may not have standing to assert their claims. However, based on the information available to the Intervenors, there is no way to verify Plaintiffs' residency representation. The Amended Complaint simply alleges that, "Plaintiffs were at all times relevant [to this action] adult residents of Boston." (Plaintiffs' First Amended Compl. ¶ 3.) The Complaint conspicuously fails to list any addresses for any Plaintiff, or to provide any other kind of information from which Plaintiffs' residency can be established. In light of the testimony of Sally McNeely, Director of Organizational Development of the Human

Resources Division of the Commonwealth of Massachusetts, that previous applicants have misrepresented their residency by *"produc[ing] documents that satisfied [the City's] requirements for proving residency when they were not, in fact, residents of communities"* (Deposition of Sally McNeely ("McNeely Dep.") at 30:3-7 (emphasis added), attached hereto as Exhibit 2), the Intervenors are entitled to challenge the conclusory allegations of the Amended Complaint.

Verification of Plaintiffs' residency is fundamental to the issue of standing. If Plaintiffs' were not in fact residents of Boston, Plaintiffs' names would have been placed on the certification list *after* every Boston resident. See M.G.L. c.31, § 58. (See also McNeely Dep. at 69, 70.) As such, Plaintiffs would not have been reached for consideration for appointment, even under a race-neutral system. See Donahue I, 304 F.3d at 117 ("[N]otwithstanding the race-conscious elements of the consent decree, [the applicant] was too far down the list to be even remotely considered for hiring."). Therefore, if Plaintiffs were not Boston residents at the time their names appeared on the certification list, they cannot establish the "causal connection between the asserted injury and challenged system," Donahue I, 304 F.3d at 115, necessary for standing.

Furthermore, if Plaintiffs were not Boston residents, they would not have suffered the injury necessary to confer standing for "prospective relief in the form of an injunction and a declaratory judgment." Donahue II, 371 F.3d at 12. If Plaintiffs misrepresented their residency to advance their position on the certification list, Plaintiffs did not compete with other applicants on an "equal footing," but instead manipulated the system established by M.G.L. c. 31, § 58 to the disadvantage of other applicants. Therefore, Plaintiffs would not have "the relevant injury [which] is the 'inability to compete on an equal footing.'" Id. (quoting Donahue I, 304 F.3d at

119). To the contrary, Plaintiffs would have garnered for themselves the opportunity to compete with an advantage to which they are not entitled.

Finally, although Plaintiffs' motion suggests that verification of their identified residency should not be considered until after Plaintiffs received conditional offers of employment, Plaintiffs should not be able to assert standing based on an unverified allegation of residency.[2] Given Ms. McNeeley's testimony that, in the past, applicants have falsely claimed Boston residency (McNeeley Dep. at 30:3-7), and the conclusory allegations of the First Amended Complaint, Intervenors should be permitted to question Plaintiffs about their residency before this Court invokes jurisdiction to consider abolition of a longstanding consent decree that has operated to improve the hiring practices of the Boston Police Department.

### B. Plaintiffs' Education Is Fundamental To Standing.

Plaintiffs' education is also fundamental to their standing in this case. M.G.L. c. 31 § 58 states that:

> As a prerequisite to appointment to the position of regular police officer in a city . . . a person shall have graduated from high school, or received a high school graduation equivalency certificate from the department of education, or served for three years or more in the armed forces.

This language is contained within the same statutory section as the minimum-age requirement,[3] see id., and therefore should be considered as a pre-qualifying, threshold factor,

---

[2] The Court should not interpret M.G.L. c. 31, § 58 in a manner that conveys standing on applicants who misrepresent their residency to gain advantage over others on the certification list. To hold otherwise would produce an absurd result. Cf. Arevalo v. Ashcroft, 344 F.3d 1, 8 (1st Cir. 2003) ("It is trite, but true, that courts are bound to interpret statutes whenever possible in ways that avoid absurd results.").

[3] Section 58 also establishes both the minimum and maximum age for eligible police officer applicants. The statute provides that:

> No person shall be eligible to have his name certified for original appointment to the position of . . . police officer . . . if such person has reached his thirty-second birthday on or before the final date for the filing of applications . . . for the examination used to establish the eligible list from which such certification is to be made. No person shall be eligible to take an examination for original appointment to the position of . . . police officer in any city or town if he will not have reached his nineteenth birthday on or before the final date for the filing of applications for such examination, as so stated.

aimed at general eligibility for appointment to the police department. The education requirement set forth in section 58 is not a post-certification disqualifying factor, such as drug use or physical health, which is not included in this statutory section. If Plaintiffs do not meet the educational requirements of section 58, they were not "able and ready" to be appointed to a position on the police force. "A plaintiff seeking to establish standing to pursue a claim for prospective relief must also be able to show that he is able and ready to apply for the benefit and that the challenged discriminatory policy prevents him from doing so." Donahue II, 371 F.3d at 12 (internal quotations omitted).

### C. The Gordon Affidavit Does Not Establish That Every Plaintiff Has Standing.

Plaintiffs' motion relies on the Gordon Affidavit to support the assertion that Plaintiffs' standing is established "conclusively" through a mathematical formula. This ostensible "formula" is set forth in paragraph "c" of the affidavit. To the extent the Gordon Affidavit, and in particular, the "formula" described in paragraph "c" is even comprehensible, it provides conclusions based on self-serving omissions and unsupported assumptions. As such, the Gordon Affidavit does not establish Plaintiffs' standing with the as-claimed mathematical certainty.

For example, the Gordon Affidavit overlooks the fact that seven of the named plaintiffs were positioned on the certification list in a ranking "tie" with at least thirty-three other applicants. (See Ex. 1 at 12-19.)[4] As confirmed by the testimony of Edward Callahan, Director of Human Resources for the Boston Police Department, the City's selection of applicants from this "tie group" would be absolutely discretionary. (Deposition of Edward P. Callahan ("Callahan Dep.") at 127:7-24, attached hereto as Exhibit 3.) The City's selection of a particular applicant from a tie group is "a judgment call" based on "the totality of the candidate's

---

[4] According to the testimony of Ms. McNeely, the phrase "D-TIE" located after an applicant's name on the certification list represents a non-minority applicant in a ranking tie with other non-minorities with the phrase "D-TIE" located after their names. The non-minority tie group begins with the first "D-TIE" applicant following an applicant with the phrase "D-TIE END" located next to that applicant's name. The tie group ends with the next occurrence of the phrase "D-TIE END." (McNeely Dep. at 43-44.)

background vis-à-vis the other candidates." (Callahan Dep. at 111:7-10.) Given the discretionary nature of this selection process, Plaintiffs cannot assert that all of them would have been reached for consideration for appointment to the Boston Police Department under a race-neutral system.

Accordingly, the Intervenors are entitled to depose Plaintiffs about whether they meet the threshold requirements to become Boston police officers and thus have standing to bring this action. The documents available do not adequately provide the information the Intervenors seek, and in any event, do not substitute for the testimony of Plaintiffs about their background qualifications and representations to the City of Boston. The Court should, therefore, deny Plaintiffs' Motion for a Protective Order.

## III. THE DEPOSITIONS WILL POSE NO BURDEN TO PLAINTIFFS.

In their motion, Plaintiffs take the position that it would be unduly burdensome for their depositions to be taken on the critical issue of whether or not they have standing to bring this case. This position is not credible. Plaintiffs "must ensure that [they] establish[] standing for each claim and for each form of relief sought." Donahue I, 304 F.3d at 116 (citing Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210-211 (1995)). The Intervenors seek to ensure that Plaintiffs meet this burden.

Plaintiffs seem to base their position on the argument that the depositions would not produce additional evidence regarding standing. (See Plaintiffs' Memorandum at 5.) This contention is plainly wrong. First, the fact that information sought by the depositions might be available from other sources does not justify a protective order prohibiting depositions. See Prozina Shipping, 179 F.R.D. at 48 (citing Wright v. Patrolmen's Benev. Ass'n, 72 F.R.D. 161, 164 (S.D.N.Y. 1976) (protective order barring deposition will not be granted on the grounds that information might be available from other sources)). Second, as demonstrated above, Plaintiffs'

qualifications for appointment vis-à-vis other applicants and the accuracy of their representations to the City are fundamental to Plaintiffs' standing, and are best explored through oral depositions.[5]

Plaintiffs also note that the Intervenors have noticed all eight depositions to occur seriatim over three days – five days fewer than the amount of time permitted by the Federal Rules of Civil Procedure – and, without explanation, offer the conclusion that this fact demonstrates an intent to annoy, oppress, and burden Plaintiffs. In fact, the notices demonstrate the opposite: the depositions will be short, narrowly focused, and will pose minimal inconvenience to the eight named plaintiffs. Further, Intervenors have always been willing to schedule the depositions for mutually convenient dates and times.

Therefore, Plaintiffs have not and cannot provide this Court with specific facts of extraordinary circumstances that would justify the prohibition of the noticed depositions. See Prozina Shipping, 179 F.R.D. at 48. The Intervenors simply seek to conduct basic discovery of Plaintiffs' ability to assert their claims in this Court. Accordingly, Plaintiffs' motion must be denied.

## IV. THE BIFURCATION ORDER DOES NOT FORECLOSE DISCOVERY OF PLAINTIFFS' STANDING.

Plaintiffs cannot sidestep their obligation to establish standing at the outset of this litigation by reference to the May 27 Joint Statement bifurcating liability and remedy (attached

---

[5] To the extent Plaintiffs suggest that the Intervenors must demonstrate why it is necessary to take the noticed depositions, they misapprehend the law and the Federal Rules of Civil Procedure. Intervenors have no such burden. See Prozina Shipping, 179 F.R.D. at 48 n.7; Fed R. Civ. P. 26(c), 30. It is Plaintiffs who must demonstrate to the Court why the noticed depositions should be prohibited.

- 10 -

hereto as Exhibit 4).[6] In his June 22, 2004 letter objecting to the noticed depositions (attached hereto as Exhibit 5), Plaintiffs' counsel stated that:

> Because the issue of liability has been bifurcated from the issue of remedy, we do not see the relevance of or need for taking depositions from the plaintiffs in this matter, as these witnesses have no information tending to establish liability or lack thereof.

Plaintiffs apparently believe that the Joint Statement in this case prevents discovery of information relating to standing. Plaintiffs are incorrect as a matter of law. As discussed above, standing a threshold, jurisdictional issue grounded in Article III. See Donahue I, 304 F.3d at 115. Consequently, the Joint Statement has no impact on, or relationship to, the Intervenors' pre-trial discovery of information related to Plaintiffs' standing.

## CONCLUSION

For the foregoing reasons, the Intervenors request that the Court:

(1) deny Plaintiffs' Motion for Protective Order to Quash the Intervenors' Noticed Depositions of Plaintiffs;

(2) order that the depositions of Plaintiffs occur forthwith;

(3) defer any consideration of the motion for preliminary injunction that Plaintiffs are scheduled to file today until the Intervenors have received an opportunity to conduct the noticed depositions;

(4) schedule a hearing; and

---

[6] In agreeing to the Joint Statement prepared by Plaintiffs' counsel, Intervenors had no discussions with Plaintiffs' counsel regarding the impact of the bifurcation of liability and damages on discovery. Intervenors would not have agreed to bifurcation if it meant a waiver of discovery on the issue of standing.

(5) set a new briefing and hearing schedule for the motion for preliminary injunction that Plaintiffs are scheduled to file today until the Intervenors have received an opportunity to conduct and review the noticed depositions.

BOSTON BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE AND MASSACHUSETTS ASSOCIATION OF MINORITY LAW ENFORCEMENT OFFICERS

By their attorneys,

*/s/ C. R. Noyes*

Harry T. Daniels (BBO # 113800)
Mark D. Selwyn (BBO #565595)
Jennifer L. Carpenter (BBO #647214)
Christopher R. Noyes (BBO #654324)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Robin L. Alperstein (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
300 Park Avenue
New York, New York 10022
(212) 937-7200

Nadine Cohen (BBO # 090040)
Lawyers' Committee For Civil Rights
  Under Law of the Boston Bar Association
294 Washington Street, Suite 443
Boston, Massachusetts 02108
(617) 482-1145

Dated: July 15, 2004

## CERTIFICATE OF SERVICE

I, Christopher R. Noyes, hereby certify that a copy of the foregoing has been served by hand this 15th day of July, 2004 to the following attorneys of record:

Harold L. Lichten, Esq.
Pyle, Rome Lichten & Ehrenberg, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108

Stephen G. Cox, Esq.
City of Boston
Boston City Hall, Room 615
Boston, MA 02201

Ginny Sinkel, Esq.
Attorney General's Office
One Ashburton Place, Room 2019
Boston, MA 02108-1698

Robert L. Quinan, Jr., Esq.
Attorney General's Office
One Ashburton Place, Room 2019
Boston, MA 02108-1698

Christopher R. Noyes