# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Pedro Castro, et al

     v.

Nancy B. Beecher, et al

Civil Action
No. 70-1220-W
No. 74-2982-C

## CONSENT DECREE

In accordance with the Opinion and Order of this Court, dated January 7, 1975, and with the assent of counsel, the Court hereby enters this Consent Decree.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:

### PRESENT CERTIFICATIONS

1. The Director of Civil Service (hereinafter Director shall mean the Director and his successors, or after July 1, 1975, the Personnel Administrator and his successors) shall on July 8, 1975 establish groups of police candidates in accordance with Paragraph 2 of this Consent Decree, rank candidates within each group in accordance with Paragraph 3 of this Consent Decree, and certify police candidates as eligible for appointment to each appointing authority subject to Civil Service in accordance with Paragraph 4 of this Consent Decree.

2. The Director shall establish the following groups:

    i. Group A shall consist of all Black and Spanish-surnamed applicants who failed any of the 1968-70 Police Entrance Examinations, but passed the 1972 Interim Police Entrance Examination and are otherwise qualified for appointment on the basis of existing requirements.

112

-2-

ii. Group C shall consist of all Black and Spanish-surnamed persons, excluding those in Group A, who passed the 1972 Interim Police Entrance Examination and are otherwise qualified for appointment on the basis of existing requirements.

iii. Group D shall consist of all other persons, excluding those in Groups A and C, who passed the 1972 Interim Police Entrance Examination and are otherwise qualified for appointment on the basis of existing requirements.

The eligible lists for all three groups shall expire on January 4, 1976. However, the City of Boston shall make no police officer appointments and accept no police officer transfers prior to January 5, 1976. If the eligible list based on the Examination scheduled to be administered in October, 1975 is not established by January 5, 1976, or if other circumstances prior to January 5, 1976 lead the City of Boston to believe it must hire, the City of Boston reserves its right to move this Court to authorize police officer appointments from the eligible list based on the 1972 Interim Police Entrance Examination. All parties fully anticipate that in the event the City of Boston is permitted to hire from the eligible list based on the 1972 Interim Police Entrance Examination after July 7, 1975, if the plaintiffs and the City of Boston cannot themselves agree upon compensatory relief, this Court shall order such limited additional compensatory relief beyond certification of one candidate from Group A for every candidate from Group B after the eligible list for the Examination scheduled to be administered in October, 1975, is established as it deems appropriate.

3. The Director, if petitioned by an appointing authority prior to certification to impose a residency preference pursuant to c.31, s.48A, shall impose such residency preference within each of the three groups described in Paragraph 2 of this Consent Decree.

-3-

4. The Director shall certify police applicants as follows:

i. In response to requisitions submitted by appointing authorities, candidates shall be certified on the basis of one candidate from Group A for every candidiate certified from Group D until the list of candidates in Group A is exhausted.

ii. Upon the exhaustion of Group A, candidates shall be certified to requisitioning appointing authorities on the basis of one candidate from Group C for every three candidates certified from Group D, until the candidates in Groups C and D are exhausted.

iii. Should a candidate qualify to be placed into Groups A, C or D after exhaustion of the Group for which he is eligible, said Group will be revived for purposes of affording the candidate the position he would have enjoyed.

iv. The Director shall not certify or approve appointments for positions of reserve police officer on any new or existing police reserve list.

5. The Director shall disapprove any appointment unless the appointing authority has furnished said Director with a written statement of the reasons for rejecting the appointment of any candidate higher on the list. Said Director shall furnish a written statement of these reasons to the plaintiffs' attorneys, and also to the candidate upon written request of the candidate.

## RECRUITMENT

6. At least ninety (90) days prior to the administration of each future police entrance examination, the Director shall submit to the parties a plan detailing the Director's proposed affirmative program to recruit Black and Spanish-surnamed applicants. Said recruitment program shall include public statements, advertising in the media of press, radio, and television, direct contact with minority organiza-

-4-

tions; and, in advance of the Examination scheduled to be administered in October, 1975, training to prepare minority candidates to pass said Examination, provided that the Director receives an anticipated grant for minority recruitment from the United States Law Enforcement Assistance Administration. Said program shall also include a report containing, for each appointing authority, the number and percentage of Black and Spanish-surnamed police officers, provided that the report of the racial composition of each appointing authority may be submitted to the parties as late as thirty (30) days prior to administration of the Examination scheduled for October, 1975. The plaintiffs shall have fifteen (15) days to object to the Director's program. The Director shall have five (5) days to respond to plaintiffs' objections, if any, to the Director's program. Any dispute between the parties regarding the recruitment program, which cannot be resolved, will be resolved by this Court upon motion of any party. Any objection to the recruitment program, not made in writing within fifteen (15) days, shall be deemed to have been waived.

## FUTURE EXAMINATIONS

7. The Director, in implementing this Consent Decree, shall administer on or before October 19, 1975 (hereinafter the October Exam) a police written examination battery as described in a letter dated June 27, 1975 from the Director of Civil Service, Edward W. Powers, to the Attorney General of the Commonwealth of Massachusetts, Francis X. Bellotti, a carbon copy of which has been received by Thomas Mela, Esq. The contents of this letter, which identifies and explains the use of each examination component including the "ranking", "flagging" and "literacy" components shall remain confidential until after the administration of

115

-5-

the October Exam so as not to compromise the security of said examination. Said Examination shall be administered to all police officer applicants to appointing authorities within the jurisdiction of Civil Service. Said Examination shall be administered only after said Director has satisfied the recruitment obligations imposed by Paragraph 6 of this Consent Decree.

8. The plaintiffs take no position with respect to the validity of the October Exam but agree to its use to establish an eligible list for the purpose of implementing this Consent Decree. The plaintiffs do not agree to administration of the October Exam after its administration in October, 1975, and the Director agrees that no police entrance examination shall be administered in the future unless it has been validated in conformity with the Testing Guidelines of the Equal Employment Opportunity Commission, 29 C.F.R. s.1607.1, et. seq.

9. With respect to the administration of the October Exam, the cut-off score for determining which candidates have passed said Exam will be set by agreement of the parties. The plaintiffs or the Director may submit the question of the appropriate cut-off scores on the "ranking" and "flagging" components of said Exam and, relative to the "flagging" instrument, the manner in which applicants may be subjected to further individualized psychological "screening" to this Court for resolution. In any event, the cut-off scores and "screening" should be set so that the method and ratios of certification described in Paragraph 23 of this Consent Decree can be implemented.

10. If subsequent to the administration of the October Exam it appears that pools A or B in Paragraph 21 below are inadequate or will become depleted so as to prevent the effectuation of the method and ratios of certification described in Paragraph 23 of this Consent Decree, the Director shall administer a second police entrance examination. It shall be left to the parties or the Court, upon motion of any party, to

determine what examination will be given, which candidates will be eligible to take the examination, and the time period within which the examination will be given, provided that this Paragraph shall not effect the authority of the Director to select and hold regularly scheduled police entrance examinations in contemplation of the expiration of an eligible list as provided by Massachusetts law.

11. Spanish-surnamed applicants for the October Exam will be given the option of taking said Exam in Spanish. However, the Director shall require such persons who take said Exam in Spanish to pass a literacy test to demonstrate their ability to read and write the English language.

12. Within thirty (30) days after the administration of said literacy test, the Director shall submit to the parties a report showing the number of individuals who took the October Exam in Spanish, and the pass/fail rate of those individuals on the literacy test.

13. All candidates who take the October Exam shall be informed, individually, and in writing, prior to the time that eligibility lists are established, that they are required to meet the following criteria before they can be appointed:

a. Receive a passing mark on the October Exam. Those individuals who take the October Exam in Spanish must pass the literacy test.

b. Pass a medical examination. It will be noted that said medical examination will be available for inspection at the office of the Director.

c. Be determined by the Director to be of good moral character. It will be noted that a copy of the Standards and Procedures for the Screening of Ex-offenders will be available for inspection at the office of the Director.

d. Provide a certificate of birth or other evidence of date and place of birth satisfactory to the Director.

-7-

Further, each candidate shall receive, at the time provided above:

    e. A list of all appointing authorities which require an applicant to have a driver's license.

    f. A list of all appointing authorities which have a minimum height requirement.

    g. A list of all appointing authorities which require an applicant to pass a swim test.

The Director fully anticipates funding from the United States Law Enforcement Assistance Administration with which to employ a College Intern during twenty (20) hours per week for the life of the eligibility list based on the October Exam, who will be responsible for establishing and maintaining contact with Black and Spanish-surnamed candidates and for assisting said candidates to satisfy the criteria described in this Paragraph.

14. The eligibility list established as a result of the October Exam shall be established within six (6) months of said Exam and shall expire two years from the date said list is first established.

15. Nothing in this Consent Decree shall be construed to limit the authority of the Director to delegate the administration of Civil Service functions so far as practicable to the cities and towns, nor to limit the right of the plaintiffs to move this Court to modify any entrance requirement with the exception of the October Exam itself, whether imposed or delegated by the Director, provided that any Black or Spanish-surnamed person who failed a Police Entrance Examination administered by the Director between 1968 and 1970 and was then eligible on account of age shall be eligible to take the October Exam, not withstanding his failure to meet the current age requirements.

-8-

16. At each future police entrance examination (which, hereinafter, shall include the said October Exam), the Director shall require all candidates for police officer positions to provide under penalty of perjury the following information: Whether the candidate is (a) caucasian (white); (b) black; (c) Spanish-surnamed (i.e., the candidate was born in a Spanish-speaking country or if the candidate was raised in a home where the primary language was Spanish); (d) other. Within sixty (60) days after the administration of each future police entrance examination, the Director shall furnish the parties with a summary of the racial composition of the candidates examined.

17. Within sixty (60) days after each future police entrance examination has been graded, the Director shall submit a report to the parties showing the results by race of all persons taking said examination, and the name, address, and grade of each Black or Spanish-surnamed individual. The parties shall also receive an item analysis of the results of the said examination, by race.

18. The Director shall notify the plaintiffs and supply evidence to the plaintiffs whenever a particular appointing authority has informed the Director that it has achieved a complement of Black and Spanish-surnamed post-probationary police officers commensurate with the percentage of minorities within the community or that the appointing authority is serving a jurisdiction with less than one per cent (1%) Black and Spanish-surnamed population. The plaintiffs shall have thirty (30) days to object to the evidence contained in the Director's notification. If such objection is not made within thirty (30) days the particular appointing authority will no longer be subject to Paragraph 23 of this Consent Decree, and certification to that appointing authority will be made according to existing Massachusetts law. Any disputes between the parties in this regard which cannot be resolved by the parties will be resolved by this Court upon motion by any of the parties.

119

-9-

19.  Following establishment of the eligibility list based on each future police entrance examination, and every six (6) months thereafter, plaintiffs will be furnished with a copy of the eligibility list for each appointing authority subject to the jurisdiction of the Director.  Further, plaintiffs will receive from the Director the following information:

On a monthly basis:

(a)  A copy of the requisition, certification, and report on certification for each requisitioning appointing authority.

(b)  The name of each Black and Spanish-surnamed candidate from said eligibility list whose employment is terminated.

(c)  The name of each police officer whose transfer between appointing authorities has been approved by the Director subsequent to the date of this Consent Decree.

Every three months:

(d)  The name and address of each Black and Spanish-surnamed candidate who has passed a future police entrance examination, including the status of each such candidate's eligibility, and, if any such candidate is ineligible, the reasons therefor.

## FUTURE CERTIFICATIONS

20.  Subsequent to obtaining the results of each future police entrance examination, the Director shall promptly establish groups of police candidates in accordance with Paragraph 21 of this Consent Decree, rank candidates within each group in accordance with Paragraph 22 of this Consent Decree, and certify police candidates as eligible for appointment to each appointing authority subject to Civil Service in accordance with Paragraph 23 of this Consent Decree.

120

-10-

21. The Director shall establish the following groups:

i. Group A shall consist of all Black and Spanish-surnamed applicants who pass a future police entrance examination and are otherwise qualified for appointment on the basis of existing requirements.

.ii. Group B shall consist of all other persons who pass a future police entrance examination and are otherwise qualified for appointment on the basis of existing requirements.

Eligible lists shall expire two years from the date of their establishment.

22. The Director, if petitioned by an appointing authority prior to certification to impose a residency preference pursuant to c.31, s.48A, shall impose such residency preference within each of the two groups described in Paragraph 21 of this Consent Decree.

23. The Director shall certify police applicants as follows:

i. In response to requisitions submitted by the appointing authorities of the cities of Boston and Springfield, candidates shall be certified on the basis of one candidate from Group A for every candidate certified from Group B.

ii. In response to requisitions submitted by all other appointing authorities subject to Civil Service, candidates shall be certified on the basis of one candidate from Group A for every three candidates from Group B.

iii. Should a candidate qualify to be placed into Group A or Group B after exhaustion of the Group for which he is eligible, said Group shall be revived for purposes of affording the candidate the position he would have enjoyed.

iv. Should an appointing authority fail to offer an appointment to a candidate, the Director shall disapprove any appointment unless said appointing authority has furnished said Director with a written statement of the reasons for rejecting the appointment of any candidate higher on the list. Said Director shall furnish a written statement of those reasons to the plaintiffs' attorneys, and also to the candidate upon written request of the candidate.

v. Should there be any modification of Rule 14 of the Civil Service Rules, the parties shall monitor the effect of any such change on the purposes and intent of said Decree for a period of six months. If, at the end of this time, any party is of the opinion that such modification of Rule 14 is frustrating the implementation of the method and ratios of certification described in this Paragraph, the parties will enter into negotiations to modify the method and ratios of certification or other aspects of this Consent Decree in order to effectuate the compensatory relief of said Decree. If, after the six month period has elapsed, the parties cannot themselves agree upon such modifications in said Decree, this Court shall order such additional compensatory relief beyond the method and ratios of certification as described in this Paragraph as it may deem appropriate.

24. The method and ratios of certification described in Paragraph 23 of this Consent Decree shall apply to all eligibility lists established subsequent to future police entrance examinations, and shall apply to all cities and towns subject to Civil Service law which have a minority population of one per cent (1%) or more and shall apply to the Capitol Police, the M.B.T.A. Police and the M.D.C. Police. As a city or town achieves a complement of minorities commensurate with

the percentage of minorities within the community, certification will be made according to existing Massachusetts law, and as the Capitol Police achieves a complement of minorities commensurate with the percentage of minorities within the City of Boston, and the M.B.T.A. Police or the M.D.C. Police achieves a complement of minorities commensurate with the percentage of minorities within the jurisdiction served by the M.B.T.A. Police or the M.D.C. Police, certification will be made in accordance with existing Massachusetts law, provided that appointing authorities under the jurisdiction of Civil Service shall, pursuant to this Paragraph, be exempted only from subparagraphs i, ii, iii, and v of Paragraph 23 of this Consent Decree.

25. The Court retains jurisdiction of this case.

Patrick J. King
Counsel for Plaintiffs

Thomas A. Mela
Counsel for Plaintiffs

Alan K. Posner
Counsel for Civil Service

Nicholas Foundas
Counsel for Boston Police Commissioner

Caffrey, C. J.

Dated: June 27, 1975