UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL DELEO, JR., *et al.*,

        Plaintiffs,

v.

CITY OF BOSTON, *et al.*,

        Defendants.

CIVIL ACTION
NO. 03-12538-PBS

## AFFIDAVIT OF TONI G. WOLFMAN

I, Toni G. Wolfman, on oath depose and state as follows:

1. I am an attorney admitted to practice before this Court. I have been a member of the Massachusetts bar since December 20, 1977. I have been affiliated with the law firm of Foley Hoag LLP since October 1977, first as an associate, then as a partner from November 1984 through December 31, 2003, and currently as of counsel.

2. Since approximately April 1980, I have served as counsel to the plaintiffs in the case of Castro v. Beecher, Civil Action Nos. 70-1220-W and 74-2982-C (D. Mass.). In that capacity, I have been involved over the past 24 years in the implementation of the Castro v. Beecher consent decree entered by this Court in July of 1975 (as well as a supplemental consent decree entered in July of 1976 and subsequent agreements of the parties and orders of the Court). In particular, as contemplated by those orders, I have received from the Commonwealth of Massachusetts (currently its Human Resources Division and previously its Department of Personnel Administration), reviewed and approved or objected to materials relating, among other things, to (a) the recruitment for, administration of, and scoring of all examinations for entry level police officers; (b) requisitions for Civil Service lists by local police departments or other appointing authorities, responsive certifications of eligible candidates, the appointment of police officers from Civil Service lists and cadet programs, and the reasons given by appointing authorities for bypassing or removing eligible candidates; and (c) requests by appointing authorities for exemption from the certification ratios provided in the Court's orders.

3. The July 1975 consent decree sets forth certain methods and ratios to be employed by the Commonwealth of Massachusetts in certifying candidates for appointment as entry-level police officers in the municipal police departments of all cities and towns subject to the Massachusetts civil service law, provided that such cities or towns have a minority

    (African-American or Hispanic) population of one percent (1%) or more. The July 1975 consent decree further provides: "As a city or town achieves a complement of minorities commensurate with the percentage of minorities within the community, certification will be made according to existing Massachusetts law[.]" Id. at ¶ 24.

4. Regarding release of communities from the protocol established by the Castro court, the July 1975 consent decree more specifically provides as follows: "The Director [*i.e.*, the Commonwealth's Personnel Administrator and his or her successors] shall notify the plaintiffs and supply evidence to the plaintiffs whenever a particular appointing authority has informed the Director that it has achieved a complement of Black and Spanish-surnamed post-probationary officers commensurate with the percentage of minorities within the community or that the appointing authority is serving a jurisdiction with less than one percent (1%) Black and Spanish-surnamed population. The plaintiffs shall have thirty (30) days to object to the evidence contained in the Director's notification. If such objection is not made within thirty (30) days the particular appointing authority will no longer be subject to Paragraph 23 of this Consent Decree, and certification to that appointing authority will be made according to existing Massachusetts law." Id. at ¶ 18.

5. Since the early 1980's, I have personally been involved in the process by which a substantial number of Massachusetts communities have been released from the protocol established by the Castro consent decree (hereinafter, "the exemption process"). Among the earliest releases that I was personally involved in was that of Peabody, in October of 1982.

6. In each instance in which my law firm or I have been involved in the exemption process, the Department of Personnel Administration (today known as the Human Resources Division; hereinafter referred to as "DPA/HRD") forwarded to my firm the request from the city or town for exemption and the relevant information submitted in support of that request. Typically, the supporting information would include: the identity of all tenured minority officers in the police department and their respective dates of appointment, the number of authorized uniformed positions in that department, the total population of the city or town as reflected in the most recent federal census, and the number of African-American and Hispanic residents of the city or town as stated in the same federal census report.

7. After reviewing the submitted request and supporting information, as well as the materials in my file for the relevant municipality, I would write to DPA/HRD stating whether or not the plaintiffs had any objection to the exemption request being granted. I objected only when the supporting information did not demonstrate that parity had been reached, when there was a pending certification and the hiring process that had not yet been completed, or when some serious problem involving the police department in question raised issues pertaining to their treatment of minorities that had not yet been fully resolved. In some cases, the plaintiffs' objection resulted in a delay of several months; in all cases, DPA/HRD eventually granted the municipality's exemption request.

8. I have always understood the language quoted in paragraphs 3 and 4, *supra*, to require an examination of the number of <u>tenured</u> minority ("Black or Spanish-surnamed") officers within an <u>entire</u> given police department rather than looking only at officers in the entry-level ranks or counting officers who had not completed their probationary period. Similarly, I have always maintained that the July 1975 consent decree requires appointing authorities, in calculating the percentage of post-probationary minority officers within their department, to base that percentage upon the total number of authorized positions – in other words, to include any and all vacant, authorized positions. As longtime counsel for the plaintiffs in the <u>Castro v. Beecher</u> case, I have also always understood the consent decree to permit a determination that parity has been achieved only when the correctly-calculated percentage of minority post-probationary officers within a given department equals or exceeds the percentage of minorities within that entire jurisdiction (and that latter percentage is to be derived from the most current official federal census report).

9. At no time during the 24 years that I have participated in the implementation of the <u>Castro</u> consent decree has any police department requested exemption based on the number of tenured entry-level police officers or the percentage of minorities among the entry-level category of police officers without also taking into account the rest of the uniformed personnel (including minority patrol officers who had been promoted). Approximately eighty (80) communities have been exempted from the certification rations of the <u>Castro</u> consent decree since 1980. As of today, only 12 communities, including Boston, remain subject to those provisions of the <u>Castro</u> orders. See Exhibit A hereto.

10. My understanding of the proper method by which to calculate whether parity has been achieved in a given community or not, as outlined in paragraph 8, *supra*, is fully consistent with two memoranda signed by the Commonwealth's Personnel Administrator that I received from DPA/HRD in 1986 and 1987. Copies of those memoranda are attached hereto as Exhibits B and C. It is my understanding that the process for requesting an exemption from the <u>Castro</u> consent decree that is set forth in those memoranda is fully consistent with the intention of the original parties to the <u>Castro</u> litigation and Judge Caffrey at the time the 1975 decree entered. That process has been consistently followed by DPA/HRD. Indeed, I recall that DPA used those two memoranda in connection with training programs that it ran for appointing authorities that were then subject to the certification provisions of the <u>Castro</u> decree.

11. The consistent statewide application of the terms of the <u>Castro</u> consent decree has been of great importance to the plaintiffs ever since I commenced representing them in 1980. It has provided a clear and relatively simple means of calculating "parity" -- the benchmark for measuring a given appointing authority's progress in overcoming the effects of past discrimination -- which is well known to all persons affected by the <u>Castro</u> orders. By tying exemption to the hiring patterns and progress of each appointing authority, the Court permitted the progressive narrowing of the reach of its orders as each appointing authority achieved parity, without regard to statewide demographics or the progress (or lack thereof) of any other municipality.

12. The manner in which DPA/HRD calculates parity under the Court's orders also has corrected for the impact of continuing discrimination in other forms. For example, for many years the Boston Police Department limited its cadet program (the source of as many as one-third of its recruits each year) to well-connected white candidates, thereby significantly slowing its progress towards parity. Similarly, the parity calculation process set forth in Exhibits B and C has discouraged manipulation by other appointing authorities that evidenced resistance to the goals of the Castro decree. Indeed, I recall instances in which appointing authorities attempted to delay hiring and count only incumbents without consideration of authorized but vacant slots, or count probationary recruits who could then be terminated without cause, so as to skew the parity calculation results.

13. The manner in which the parties to the Castro decree calculated parity and handled the exemption of appointing authorities from its certification ratios was challenged only once before this current lawsuit. In 1989, a group of white applicants for positions in the Boston Police Department brought a reverse discrimination action against the city of Boston and the Commonwealth of Massachusetts. Among other contentions, plaintiffs in the case of Cecilia Fagan, et al. v. City of Boston, et al., C.A. No. 89-2076-N (D. Mass.) argued that the City of Boston had reached parity under the Castro decree. On behalf of the Castro plaintiffs, I intervened in Fagan for the purpose of defending the consent decree, including the manner in which parity is calculated under its provisions. In that connection, I obtained relevant affidavits from the Personnel Administrator, David Haley, and from his counsel, Margaret Dale. Attached to this affidavit as Exhibit D is the affidavit that David Haley provided in the Fagan case. The Fagan case was subsequently dismissed following the Supreme Court's denial of certiorari in a companion action challenging a similar series of orders affecting the Boston Fire Department. Mackin v. City of Boston, C.A. No. 89-2025-S (D. Mass. 1991), aff'd 969 F.2d 1273 (1st Cir. 1992), cert. denied 506 U.S. 1078 (1993).

14. I am not aware of any material changes over the years since 1980 in the manner in which the exemption process has been conducted by DPA/HRD, appointing authorities, or my firm. In fact, the most recent exemption of an appointing authority from the Castro decree -- that of Cambridge in February of 2004 -- was handled in the identical manner that was followed from the time that we approved the exemption of Peabody in October 1982.

Signed under the pains and penalties of perjury this 15 day of July, 2004.

Toni G. Wolfman

# *EXHIBIT A*

**Police Departments That Have Been Exempted**
From Castro v. Beecher Consent Decree
(since 1980)

Acton, October 1986
Andover, October 1986
Attleboro, February 2003
Bedford, July 1989
Bellingham, March 1997
Belmont, September 1994
Beverly, January 1985
Billerica, May 1987
Bourne, October 1983
Brookline, September 2003
Burlington, July 1989
Cambridge, February 2004
Chicopee, May 1987
Clinton, April 1989
Dartmouth, August 1986
Duxbury, June 1998
Easthampton, November 1988
East Longmeadow, March 1984
Everett, February 1983
Fall River, November 1990
Falmouth, August 1987
Foxboro, September 1996
Franklin, November 1987
Gloucester, September 1988
Greenfield, December 1987
Groton, June 1988
Hanover, October 1994
Haverhill, December 1987
Holbrook, November 1999
Holden, August 1983
Hudson, May 1987
Ipswich, September 1988
Kingston, December 1985
Leominster, November 1999
Lexington, November 1987
Ludlow, August 1986
Lynn, September 1988
Marblehead, March 1983
Marlboro, October 1987
Marshfield, October 1983
Medford, September 1987
Methuen, February 1984
Natick, September 1988
Needham, February 1987
North Adams, July 1999
North Andover, May 1987
Northampton, November 1985
Norton, November 1997

Palmer, January 1980
Peabody, October 1982
Pembroke, March 1996
Pittsfield, February 1998
Rockland, August 1988
Salem, February 1986
Sandwich, March 1988
Saugus, October 1987
Scituate, August 1984
Sharon, October 1991
Shrewsbury, January 1980
Southbridge, October 1988
South Hadley, November 1998
Stoneham, December 1986
Stoughton, August 1992
Sudbury, December 1987
Swampscott, March 1982
Taunton, February 1984
Tewksbury, June 1995
Waltham, April 1986
Wareham, October 1983
Watertown, January 2000
Webster, November 1987
Wellesley, May 1995
Westfield, November 1985
West Springfield, September 1986
Westwood, July 1996
Whitman, March 1993
Williamstown, August 1997
Winchester, June 1984
Woburn, August 1984
MBTA, June 1995


as of June 2004: 80 appointing authorities


17/21803.1

Police Departments That Remain Subject To
Castro v. Beecher Consent Decree

        Boston
        Brockton
        Chelsea
        Holyoke
        Lancaster
        Lawrence
        Lowell
        New Bedford
        Randolph
        Springfield
        Winthrop
        Worcester

as of June 2004: 12 appointing authorities

17/162147.1

# *EXHIBIT B*

# dpa

## commonwealth of massachusetts
## PERSONNEL INFORMATION
### department of personnel administration

March 19, 1986

TO: Consent Decree Public Safety Appointing Authorities

FROM: David A. Haley, Personnel Administrator

SUBJECT: Process For Requesting Exemption From Consent Decrees

Public Safety Appointing Authorities subject to the provisions of the <u>Castro v. Beecher</u> (Police) and <u>NAACP v. Beecher</u> (Fire) federal consent decrees have requested information regarding the process and the criteria for seeking approval for exemption from these decrees.

An Appointing Authority who believes that the Police or Fire Department has met the requirements of the applicable decree should take the following steps:

1. Check the most recent federal census to determine:

   a. Total population of the municipality

   b. Total Black and Hispanic population of the municipality

   c. The actual percentage of the total population which is Black or Hispanic as determined by that census

2. Compare the statistics gained from the census with information specific to the Fire or Police Department under consideration:

   a. Determine the total number of authorized positions in the uniformed force in the Department

   b. Verify the total number of <u>post-probationary</u> (tenured) Black or Hispanic members of the uniformed force

   c. Determine the actual percentage of the authorized uniformed force which is made up of tenured Black or Hispanic officers of any rank

3. If the percentage of tenured Black and Hispanic officers in the municipal force equals or exceeds the percentage of Black and Hispanic members of the municipal population, a request for review of exemption may be filed with the Department of Personnel Administration:

   a. A letter requesting such exemption should be forwarded over the signature of the Appointing Authority and should be forwarded to the Director, Bureau of Local Government Services, Room 307, One Ashburton Place, Boston, MA 02108.

   b. The letter should detail all facts and statistics determined in steps 1 - 3 above.

   c. The Appointing Authority should include with the request a listing (by name, ethnic identity, and permanent appointment date) of all tenured Black and Hispanic officers employed in the municipal Police or Fire Force.

The information will be reviewed by the Department of Personnel Administration and by the Counsel for the Plaintiffs under the NAACP and Castro consent decrees.

Written notice of the decision regarding the exemption request will, in most cases, be forwarded to the community within thirty days of the completed request.

It should be noted that no request for exemption should be filed if the minority members of the police or fire force have not yet completed their probationary periods. Requests for exemption based solely on a change in population figures will not be approved by Counsel for the Plaintiffs and should not be submitted.

Within the past few months, the Police Departments in Salem, Kingston, West Springfield and Northampton and the Fire Department in Lynn have all qualified for exemption from the applicable consent decrees. Each of these departments should be commended on its efforts to meet both the spirit and the letter of the decrees. The Department of Personnel Administration will, working cooperatively with Plaintiff's Counsel, provide support and technical assistance to other communities subject to the NAACP and Castro consent decrees in an effort to increase and improve municipal understanding of and final compliance with the intent of these decrees.

Should you have questions regarding the information contained in this memorandum, please contact Christine Kent, Director, Local Government Services, at (617)-727-4917.

DAH:CK:kea

# *EXHIBIT C*



# commonwealth of massachusetts
# PERSONNEL INFORMATION
### department of personnel administration

September 1, 1987

TO:      Consent Decree Public Safety Appointing Authorities

FROM:    David A. Haley, Personnel Administrator

SUBJECT: Process For Requesting Exemption From Consent Decree

Public Safety Appointing Authorities subject to the provisions of the Castro v. Beecher (Police) and NAACP v. Beecher (Fire) federal consent decrees have requested information regarding the process and the criteria for seeking approval for exemption from these decrees.

An Appointing Authority who believes that the Police or Fire Department has met the requirements of the applicable decree should take the following steps:

1. Check the most recent federal census to determine:

   a. Total population of the municipality

   b. Total Black and Hispanic population of the municipality

   c. The actual percentage of the total population which is Black or Hispanic as determined by that census

2. Compare the statistics gained from the census with information specific to the Fire or Police Department under consideration:

   a. Determine the total number of authorized positions in the permanent full-time uniformed force in the Department

   b. Verify the total number of post-probationary (tenured) full-time permanent Black or Hispanic members of the uniformed force

   c. Determine the actual percentage of the authorized uniformed permanent full-time force which is made up of tenured Black or Hispanic officers of any rank

if the percentage of tenured Black and Hispanic officers in the municipal force equals or exceeds the percentage of Black and Hispanic members of the municipal population, a request for review of exemption may be filed with the Department of Personnel Administration:

a. A letter requesting such exemption should be forwarded over the signature of the Appointing Authority to the Director, Bureau of Local Government Services, Room 307, One Ashburton Place, Boston, MA 02108.

b. The letter should detail all facts and statistics determined in steps 1 - 3 above.

c. The Appointing Authority should include with the request a listing (by name, ethnic identity, and permanent appointment date) of all tenured Black and Hispanic officers employed in the municipal Police or Fire Force.

The information will be reviewed by the Department of Personnel Administration and by the Counsel for the Plaintiffs under the NAACP and Castro consent decrees.

Written notice of the decision regarding the exemption request will, in most cases, be forwarded to the community within thirty days of the completed request.

It should be noted that no request for exemption should be filed if the minority members of the police or fire force have not yet completed their probationary periods or if a certification issued in consent decree format is outstanding. Requests for exemption based solely on a change in population figures will not be approved by Counsel for the Plaintiffs and should not be submitted.

Should you have questions regarding the information contained in this memorandum, please contact Christine Kent, Director, Local Government Services, at (617) 727-4917.

# *EXHIBIT D*

UNITED STATES DISTRICT COURT
FOR THE COMMONWEALTH OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \*  
CECELIA FAGAN, ET AL.  
v.  
CITY OF BOSTON, ET AL.  
\* \* \* \* \* \* \* \* \* \* \* \* \*

C.A. 89-2076-N

### AFFIDAVIT OF DAVID A. HALEY

1. I, David A. Haley, on oath depose and state: My name is David A. Haley. I have served as Personnel Administrator for the Commonwealth of Massachusetts since my initial appointment on August 8, 1983. One of my responsibilities as Personnel Administrator is to ensure that the Department's obligations under the terms of the federal court consent decree in <u>Castro v. Beecher</u> are met.

2. Since my appointment in 1983 and continuing to the present, it has been my understanding, and, upon information and belief, the understanding of my predecessors and of the responsible staff of the Department that the population parity goal set by the <u>Castro v. Beecher</u> consent decree refers to current population information and not to the population as of the date of the entry of the decree.

3. At least since 1983, and, upon information and belief, prior to my appointment, the practice at the Department

2

has required covered appointing authorities to have a post-probationary Black and Hispanic police force proportionately equal to the Black and Hispanic population of the community as evidenced in the most recent federal census in order to be granted exemption from the Castro v. Beecher decree.

4. On March 19, 1986 and again on September 1, 1987, I issued the attached memoranda to consent decree appointing authorities outlining the steps appointing authorities should take in requesting exemption from the consent decree. The memoranda specifically refer to "most recent federal census" information.

5. DPA's records indicate that when the Castro v. Beecher consent decree was originally entered, there were approximately 180 covered police departments, including the Boston Police Department and three state agency police departments. By court decree in July of 1976, eighty-one police departments were exempted from the terms of the decree. In 1977 two police departments were exempted from the decree. Between January, 1980 and July, 1983 seven police departments were exempted. Since my appointment in 1983, fifty-two additional police departments have been exempted from the terms of the decree. These exemptions were based on meeting current federal census figures. There are currently thirty-eight police departments, including the Boston

Police Department and three state agency police departments, remaining under the decree.

Signed under the pains and penalties of perjury this ___28th___ day of November, 1990.

                                                 David A. Haley
                                               Personnel Administrator