UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL DELEO, JR., THOMAS BARRETT, MICHAEL CONNEELY, MATTHEW HOGARDT, BRENDAN DEVER, PATRICK ROGERS, CHRISTOPHER CARR, and BRIAN DUNFORD,<br>      Plaintiffs<br><br>v.<br><br>CITY OF BOSTON, Massachusetts; MITT ROMNEY, in his capacity as Governor of the Commonwealth of Massachusetts; and COMMONWEALTH OF MASSACHUSETTS,<br><br>      Defendants<br><br>BOSTON BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE and MASSACHUSETTS ASSOCIATION OF MINORITY LAW ENFORCEMENT OFFICERS,<br><br>      Intervenors | Docket No. 03-12538-PBS |

PLAINTIFFS' RULE 56.1 RESPONSE TO DEFENDANTS' AND
INTERVENORS' STATEMENTS OF DISPUTED MATERIAL FACTS
<u>AND STATEMENTS OF ADDITIONAL MATERIAL FACTS</u>

  Pursuant to Rule 56.1 of the Local Rules of the U.S. District Court for the District of Massachusetts, Plaintiffs hereby submit their response to the Defendants' and Intervenors' Rule 56.1 Statements of Disputed Material Facts and Additional Statements of Facts. The paragraph numbers referenced below refer to the numbers originating in the Plaintiffs' original Rule 56.1 Statement of Facts (SOF) as continued through the Rule 56.1 Statements of the Intervenors/Commonwealth Defendants and the City Defendants:

1

CLARIFICATIONS TO MATERIAL FACTS
DISPUTED BY THE DEFENDANTS AND/OR INTERVENORS.

22. As a point of clarification, in selecting candidates from a certification list, the Boston Police Department ("BPD") goes down the certification list name-by-name and does not bypass candidates on the certification list except for cause. [Callahan Depo. 68-69 ("Q: You go right down the list? A: Yes.").]

34. The evidence belies the dispute raised by the Commonwealth/Intervenors. As stated in Plaintiffs' original SOF, the BPD reached approximately 30, not 20, non-veteran minority candidates, as follows (parenthetical numbers refer to the page numbers in the column next to the candidates' names): Carey (4), Solana (4), Bryant (5), Dorfeuille (5), Gumbs (5), Madina (6), Nahim (6), Pires (6), Trice (6), Ace (6), Cabrilana (7), Castro (7), Cordasco (7), Crespo (7) (reached on female certification), Daddabbo (7) (reached on female certification), Delacruz (7), Diaz (8), Dorsey (8) (reached on female certification), Drinkard (8), Eunis (8), Evans (8) (reached on female certification), Evans (8), Gouras (9), Henriques (9), Hill (10), Key (10), Little (10), Medina (10), Reveron (11), Smith (11). [Ex. 26.] The Commonwealth/ Intervenors did not count those reached on the female certification, which leads to a total of 26 non-veteran minority candidates reached ahead of the Plaintiffs. The Commonwealth/ Intervenors also failed to include those who were removed from consideration for some reason that was redacted off of the document. It is apparent, however, that those individuals had to have been considered in order to have been rejected for whatever reasons have been redacted, since no person after the last individual reached (Smith (11)) shows any redacted reason for non-selection. Id.

More importantly, the Commonwealth/Intervenors are incorrect in disputing the number of non-minority veterans who were not reached in October 2003. The Commonwealth/ Intervenors counted among this number three candidates who were considered: Woods-Antunes (9) was reached and selected on the female certification [Ex. 23 at 45]; Mitchell (10) was reached but not selected for some redacted reason [Ex. 26 at 91]; and Zawadski (11) was reached but not selected for some redacted reason [Ex. 26 at 91]. By virtue of being selected or being removed from consideration, these three individuals would not have competed with the Plaintiffs for any remaining spots, leaving only 11 non-minority veterans ahead of Plaintiffs for consideration on the October 2003 list.

35. Plaintiffs dispute the Commonwealth/Intervenors' assertions regarding what the City might do with regard to minority hiring if not constrained by the Beecher decree as such assertions are purely speculative and not fact-based. Moreover, Plaintiffs note the Commonwealth/Intervenors' incorrect calculation of the number of non-minority veterans who were not reached for consideration (see supra ¶ 34) and conclude that the Plaintiffs would have been reachable for consideration.

37. Plaintiffs do not dispute the numbers contained in the Commonwealth/ Intervenors' SOF but note that these numbers are for all individuals who took the April 2003 examination, not merely those asking to be considered for Boston Police Officer positions. Plaintiffs also note that the information contained in this paragraph is based on material provided by the Commonwealth after the Plaintiffs' motion was filed.

3

PLAINTIFFS' RESPONSE TO COMMONWEALTH/INTERVENORS'
AND CITY'S ADDITIONAL FACTS IN SUPPORT OF
THEIR OPPOSITIONS TO PLAINTIFFS' MOTION.

53. Undisputed.

54. Undisputed.

55. Undisputed.

56. Plaintiffs have no independent knowledge with which to dispute or agree.

57. Disputed to the extent that the Commonwealth/Intervenors characterize the terms of the consent decree as unambiguously requiring a comparison of the percentage of minorities in an entire police force to the percentage of minorities in the population of the municipality as a whole.

58. Undisputed.

59. Disputed. The Commonwealth/Intervenors offer no evidence supporting their assertion that the BPD uses the phrase "police officer" to refer to all uniformed personnel. The phrase "police officer" does not appear anywhere on the strength reports that the Commonwealth/Intervenors cite to for support, and there is no evidence that the BPD has specifically adopted any term or phrase used by Callahan.

60. Dispute the characterization of the statutory preferences as "favor[ing]" one group over another. For example, the veterans preference is open to any individual who has served in the armed forces, regardless of race. What is not disputed is the core fact that there are more non-minority candidates than minority candidates who have statutory preferences.

61. It is undisputed that there are more men than women with statutory preferences. However, it is disputed that the BPD is impeded in its ability to hire female

4

police officers, as is readily apparent from the special certifications that the Department has used specifically to hire female officers.

62. Disputed. The exhibit the Commonwealth/Intervenors rely on to assert the scores of all minority appointees does not support their contention. The exhibit is clearly incomplete, as the BPD hired more than 37 officers off of the 2001 examination in the two classes hired in March 2002 and October 2003. [Ex. 24.]

63. Disputed to the extent that it is speculative.

64. Undisputed.

65. Disputed to the extent that it is speculative.

66. Disputed to the extent that it is speculative.

67. Undisputed.

68. Undisputed as to sentence 1. Sentence 2 is disputed as speculative, because it is not clear whether the Plaintiffs would appear on any new certification list created in the absence of race considerations and whether enough individuals ahead of the Plaintiffs would be bypassed or non-selected such that the Plaintiffs would be reached for consideration.

69. Disputed to the extent that it is speculative.

70. Disputed to the extent that it is speculative.

71. Undisputed.

72. Undisputed.

73. Plaintiffs have no independent knowledge with which to dispute or agree.

74. It is undisputed as to how the City currently calculates parity, but Plaintiffs dispute any attempt to characterize the City's approach as in accordance with the Decree.

5

75. Undisputed.

76. Disputed to the extent that the City attempts to characterize the original intent of the parties.

77. Undisputed. However, the Plaintiffs note that the number of people who took the examination reflects all the test-takers, including those who did not seek consideration by the City of Boston.

78. Disputed to the extent that the parties could fail or refuse to follow the Decree and/or a court of competent jurisdiction could order the Decree set aside even if its terms were not met.

79. Plaintiffs have no independent knowledge with which to dispute or agree.

80. Undisputed.

81. Undisputed.

82. Undisputed.

83. Plaintiffs have no independent knowledge as to the validity and currency of the quoted BPD rule.

84. Plaintiffs have no independent knowledge as to the validity and currency of the quoted BPD rule.

85. The statute speaks for itself.

86. The statute speaks for itself.

87. The statute speaks for itself.

88. Plaintiffs have no independent knowledge with which to dispute or agree.

89. Plaintiffs have no independent knowledge with which to dispute or agree.

90. Plaintiffs have no independent knowledge with which to dispute or agree.

91. Plaintiffs have no independent knowledge with which to dispute or agree.

92. Plaintiffs have no independent knowledge with which to dispute or agree.

93. Plaintiffs have no independent knowledge with which to dispute or agree.

94. Plaintiffs have no independent knowledge with which to dispute or agree.

95. Plaintiffs have no independent knowledge with which to dispute or agree.

96. Plaintiffs have no independent knowledge with which to dispute or agree.

97. Disputed to the extent that it is speculative.

98. Disputed to the extent that it is speculative

99. Plaintiffs do not dispute the City's characterizations.

100. Plaintiffs have no independent knowledge with which to dispute or agree.

101. Disputed as a purely speculative, non-fact-based opinion.

102. Plaintiffs have no independent knowledge with which to dispute or agree with sentences one and two. The third sentence is speculative.

103. Plaintiffs have no independent knowledge with which to dispute or agree.

Respectfully submitted,

PAUL DELEO, JR., THOMAS BARRETT, MICHAEL CONNEELY, MATTHEW HOGARDT, BRENDAN DEVER, PATRICK ROGERS, CHRISTOPHER CARR, and BRIAN DUNFORD,

By their attorneys,

/s/ Alfred Gordon
Harold L. Lichten, BBO #549689
Alfred Gordon, BBO #630456
Pyle, Rome, Lichten & Ehrenberg, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

Date: September 10, 2004

## CERTIFICATE OF SERVICE

I hereby certify that, in addition to being electronically filed, a true copy of the above document was served on the attorneys of record for each party by U.S. Mail on September 10, 2004.

/s/  Alfred Gordon
Alfred Gordon