UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL DELEO, JR., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Docket No. 03-12538-PBS |
| | ) |
| CITY OF BOSTON, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| BOSTON BRANCH OF THE NAACP, et al, | ) |
| | ) |
| Intervenors. | ) |

INTERVENORS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION AND/OR SUMMARY JUDGMENT

The Intervenors, with the Court's leave, submit this supplemental opposition to Plaintiffs'

Motion for Preliminary Injunction and/or Summary Judgment, in order to address questions

raised by the Court at the hearing on September 17, 2004 (hereinafter, the "Hearing").

I.     As A Matter of Law, Parity Has Not Been Reached Because The Proper Measure Is
       Based On The Percentage Of Minorities Among The Entire Police Force, Not Just
       Among Patrolmen

The Castro Consent Decree defines the minority population within a police department,

for purposes of determining whether parity has been achieved, as the "complement of Black and

Spanish surnamed post-probationary officers" within that department.  Plaintiffs concede that, if

the Court determines as a matter of law that this term refers to the entire police force (as opposed

to only entry-level police officers (patrolmen)), they "lose… under any theory."  Transcript of

September 17, 2004 hearing ("Hrg. Tr.") at 50 (attached hereto as Exhibit 1).

In support of their argument that this Court should calculate parity based on the

percentage of minorities among *patrolmen*, Plaintiffs rely exclusively on the First Circuit's

decision in Quinn v. City of Boston, 325 F.3d 18 (1st Cir. 2001), in which the court calculated

parity within the Boston Fire Department by comparing the population of firefighters against the minority population within the City.

Plaintiffs continued reliance on <u>Quinn</u> to support the use of the patrolman population is misplaced. <u>Quinn</u> *did not* hold, as a general rule, that the entry-level class is the appropriate body for determining the minority population of a municipal police department. Rather, <u>Quinn</u> applied basic rules of contract interpretation to determine how parity should be calculated *based on the specific language of the consent decree that governed hiring in the Fire Department*. <u>Quinn</u> teaches only that, in interpreting a consent decree, the Court should consider numerous factors, including the historical context of the consent decree, the custom and usage of terms in the decree within the department, dictionary definitions of those terms, and relevant case law. <u>Id.</u> at 29-32. Under First Circuit law, another important factor to consider is the conduct of the parties in enforcing the consent decree. <u>See</u> <u>Mackin v. City of Boston</u>, 969 F.3d 1273, 1276 (1st Cir. 1992) ("Few things evidence a decree's meaning more persuasively than an immutable, decade-old pattern of past practice under the decree, consensually engaged in by all sides in the underlying litigation that produced the decree.").

Several important differences between the Castro Consent Decree and the consent decree interpreted in <u>Quinn</u> militate against Plaintiffs' argument that <u>Quinn</u> requires calculating parity using "patrolmen". First, the decree in <u>Quinn</u> expressly provided that parity be calculated based on the percentage of minority *firefighters*. Second, the court found that the term "firefighter" was used within the Boston Fire Department to mean only entry-level hires who fight fires; the term "firefighter" was not used with the department itself to apply to members of the Fire Department at any rank higher than that of "firefighter" (a term that itself excluded officers). <u>See</u> <u>Quinn</u>, 325 F.3d at 31. The Castro Consent Decree does not use the term "patrolman" (the

Police Department analogue to "firefighter") but instead the terms "police officer" and "post-probationary officer."  These terms are used in the Boston Police Department to refer to *all* tenured police officers, not only entry-level officers, who are referred to separately as "patrolmen."  See Intervenors' Opposition at 20; see also Ints' SOF Ex. F (Police Department strength report categorizing as "permanent officers" every rank from patrolman up through superintendent-in-chief).  Fourth, the context of the Castro Consent Decree itself demonstrates that the parties intended that term to apply the entire department:  Judge Wyzanski's original conclusion of racial discrimination was based on a factual finding regarding the disparity between the percentage of minorities in the Boston Police *force* and the percentage of minorities in the population of Boston.  See Castro v. Beecher, 334 F. Supp. 930, 935 (D. Mass. 1971)(comparing percentage of minorities in entire police department to percentage of minorities in the population); see also Castro v. Beecher, 459 F.2d 725, 730 (1st Cir. 1972)(same).  The parties' formula for achieving parity simply tracked the same comparative formula that the court itself had used in finding that discrimination existed.  Finally, even if the term police officer is ambiguous, it is appropriate for the Court to consider evidence of the parties' course of performance.  See Mackin, 969 F.3d at 1276.  The Court has been provided with clear, undisputed evidence that the parties to the Castro Consent Decree have assessed parity using the minority population of *the entire police force, not entry-level patrolmen*, for over 30 years.  See Intervenors' Opposition at 20-21; Ps' SOF ¶ 11.

Thus, if this Court follows Quinn as plaintiffs urge, it must consider all relevant factors identified in Quinn and Mackin, and apply these factors to the *specific language of the Castro Consent Decree*.  Such application – and general principles of contract construction – requires

the conclusion that the terms "police officers" and "post-probationary officers" refer to the Boston Police Department *as a whole*, not the smaller class of patrolmen.

II.     Plaintiffs Are Not Entitled To Summary Judgment Because There Is A Genuine Factual Dispute With Respect To The Minority Population of the City of Boston

Summary judgment is inappropriate in any event because a genuine issue of material fact exists regarding the percentage of minorities in the City of Boston, and, therefore, as to whether parity has been achieved (regardless of how the percentage of minorities in the police department is calculated). In particular, the experts disagree about whether Blacks/African-Americans who are multiracial, i.e., who consider themselves to be not only Black/African-American but also of another race, should be counted as part of the minority population of Boston or excluded. See Moore Aff. ¶¶ 24, 26 and Moore Supp. Aff. (attached hereto as Exhibit 2) ¶¶ 6-7, 10-11; compare Aitken Supp. Aff. ¶¶ 11, 16-19. If these people are counted, the total minority population of Boston is 39.73%; if they are not, it is 38.26%.[1] Moore Supp. Aff. ¶¶ 6-7. As the minority population of the Boston Police Department as a whole has never exceeded 33.4%, and as the percentage of minority patrolmen has never exceeded 38.77%, this critical factual dispute is the difference between potential liability for Defendants and defeat for Plaintiffs.

On a motion for summary judgment, all reasonable inferences must be drawn in favor of the adverse party. Here, the reasonable inference is that all persons who indicated in the Census that they consider themselves Black or African American are counted as Black or African-American for purposes of determining parity, and that even that percentage – 39.73% – understates the total minority population of Boston. Plaintiffs' expert does not dispute that the data on which *both* experts rely understates the minority population of Boston due to systemic

---

[1] Dr. Moore has submitted a supplemental affidavit addressing the issue of double-counting and concluding that he did double-count in his original affidavit. Dr. Moore's supplemental affidavit corrects for that mistake, provides a revised calculation of the total minority population in Boston and demonstrates that parity has not been achieved even using the (incorrect) measure of patrolman as the basis for comparison.

undercounting in the 2000 Census.  <u>See</u> Moore Supp. Aff. ¶ 4.  Further, Plaintiffs' expert has

crossed the line into pure advocacy, even admitting that he was offering "arguments" rather than

opinions grounded in his own expertise.  <u>See</u> Aitken Supp. Aff. ¶ 16.  Confronted with his

intentional failure to count thousands of persons who he concedes consider themselves Black or

African American, Dr. Aitken has substituted himself for the finder of fact, purporting to make

factual findings about the past conduct of the parties to the Castro Consent Decree and

speculating about how candidates for entry-level police officer position might think or act, all

without any evidentiary basis whatsoever.  <u>See, e.g.</u>, <u>id.</u> ¶¶ 8-11.  Given this clear foray into

advocacy and the lack of evidentiary basis for Dr. Aitken's exclusion of almost 9,000 people

from the calculation of the Boston minority population, an evidentiary hearing is necessary to

enable the Court to weigh the evidence, make critical credibility determinations, and make

factual findings about how the population of Boston should be calculated.

Dated:  September 24, 2004

BOSTON BRANCH OF THE NATIONAL
ASSOCIATION FOR THE ADVANCEMENT
OF COLORED PEOPLE and
MASSACHUSETTS ASSOCIATION OF
MINORITY LAW ENFORCEMENT
OFFICERS,

By their attorneys,

/s/ Jennifer L. Carpenter

Robin L. Alperstein                                        Harry T. Daniels (BBO #113800)
Wilmer Cutler Pickering Hale and Dorr LLP                  Mark D. Selwyn (BBO #565595)
300 Park Avenue                                            Jennifer L. Carpenter (BBO #647214)
New York, New York  10022                                  Christopher R. Noyes (BBO #654324)
(212) 937-7200                                             jennifer.carpenter@wilmerhale.com
                                                           Wilmer Cutler Pickering Hale and Dorr LLP
Nadine Cohen (BBO #090040)                                 60 State Street
Lawyers' Committee For Civil Rights                        Boston, Massachusetts   02109
   Under Law of the Boston Bar Association                 (617) 526-6000
294 Washington Street, Suite 443
Boston, Massachusetts  02108
(617) 482-1145

## <u>CERTIFICATE OF SERVICE</u>

      I, Jennifer Carpenter, hereby certify that a copy of the foregoing has been served via facsimile and first class mail this 24th day of September 2004 to the following attorneys of record:

Harold L. Lichten, Esq.
Pyle, Rome Lichten & Ehrenberg, P.C.
18 Tremont Street, Suite 500
Boston, MA  02108

Stephen G. Cox, Esq.
City of Boston
Boston City Hall, Room 615
Boston, MA  02201

Betsy Facher, Esq.
Office of the Legal Advisor
Boston Police Department
One Schroeder Plaza
Boston, MA  02120

Robert L. Quinan, Jr., Esq.
Attorney General's Office
One Ashburton Place, Room 2019
Boston, MA  02108-1698

                                      /s/ Jennifer Carpenter
                                      Jennifer Carpenter