UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
PAUL DELEO, JR., THOMAS BARRETT,            )
MICHAEL CONNEELY, MATTHEW                   )
HOGARDT, BRENDAN DEVER,                     )
PATRICK ROGERS, CHRISTOPHER                 )
CARR, and BRIAN DUNFORD,                    )
                     Plaintiffs                           )
                                                          )
v.                                          )
                                                          )
CITY OF BOSTON, Massachusetts;              )
MITT ROMNEY, in his capacity as Governor    )       Docket No. 03-12538-PBS
of the Commonwealth of Massachusetts; and   )
COMMONWEALTH OF MASSACHUSETTS,              )
                                                          )
                     Defendants                           )
                                                          )
BOSTON BRANCH OF THE NATIONAL               )
ASSOCIATION FOR THE ADVANCEMENT             )
OF COLORED PEOPLE and                       )
MASSACHUSETTS ASSOCIATION OF                )
MINORITY LAW ENFORCEMENT                    )
OFFICERS,                                   )
                                                          )
                     Intervenors                          )
_____    )

PLAINTIFFS' PROPOSAL REGARDING
<u>EQUITABLE RELEIF FOR THE NAMED PLAINTIFFS</u>

I.      INTRODUCTION

      Per the Court's Memorandum and Order of November 23, 2004, granting Plaintiffs summary judgment with regard to the City of Boston's reliance on the <u>Castro</u> consent decree, now come the Plaintiffs and submit the following proposal for equitable relief to be provided to the Plaintiffs.

      Plaintiffs' proposal is based on the fact that, absent the consent decree, the City would have been bound by the requirements of Civil Service law and would have had to hire police

officers using the standard Civil Service hiring system. Any deviation from that system would have required legislative or court approval, and it would be entirely speculative for the parties to contend at this time that such approval would have been either sought or obtained had the City stopped hiring under the Castro decree. Rather, as with the remedies created following the decision in Quinn v. City of Boston, 325 F.3d 18 (1st Cir. 2003), the remedies here must fall within the precepts of the Civil Service system.

II.   PROPOSED REMEDY

   A.   Plaintiff DeLeo Should Be Given an Offer of Employment to Join the Next Police Officer Class and is Entitled to Backpay and Other Make-Whole Relief.

The Court noted in its November 23, 2004, Memorandum and Order that the parties were in agreement that Plaintiff DeLeo would have been reached for consideration for the October 2003 hiring class absent reliance on the consent decree. The parties' agreement on this issue, together with the facts established in previous filings, establish that Mr. DeLeo would have been given a conditional offer of employment and would have been hired for the October 2003 class absent any disqualifying factor uncovered during the City's standard background investigation.

As was established in the Petitioners' Supplemental Brief, had the City stopped using the consent decree by the time of the October 2003 hiring, twelve (12) lower-scoring minority candidates would not have been reached for consideration.[1] As for individuals who would have been considered ahead of Mr. DeLeo, there were only nine (9) non-minority veterans who would have been given priority consideration, leaving at least three (3) openings that non-veterans

---

[1] They are: Dennis Medina [6], Richard Ace [6], Marco Castro [7], Robert Cordasco [7], Bienvenid Delacruz [7], Isabel Diaz [8], Gregory Eunis [8], Ismael Henriquez [9], Joey Key [10], Julian Little [10], Joseph Medina [10], and Jason Smith [11]. The page numbers in brackets refer to the page numbers where the employees appear on the certification list for that round of hiring [Pl. SOF, Ex. 9], which are cross-referenced on HRD Certification Report, [Pl. SOF, Ex. 26].

2

could compete for.[2]  Since Mr. DeLeo was the highest scoring non-veteran, and since there was only one other individual tied with Mr. DeLeo who signed the certification list indicating a willingness to accept a position, Mr. DeLeo was guaranteed to be reached for consideration.[3] [See Pl. SOF, Ex. 9 at 13-14.]  Since Mr. DeLeo's entire tie group would have been reached for consideration, the existing evidence proves that he would have been given a conditional offer of employment, since the Boston Police Department follows a practice of hiring straight down the list without using any discretionary bypasses.  [See SOF ¶ 22, citing Callahan Depo. 68-69.] Moreover, the fact that Mr. DeLeo has a Bachelor's degree in Criminal Justice, has completed the Quincy police academy, and was at the time a Boston Municipal Police Officer with several years' experience indicates that the City was not likely to bypass him even if it were to consider using discretionary bypasses.  [Pl. SOF ¶ 45 & Ex. C.]

For these reasons, it is clear that Mr. DeLeo would have been given a conditional offer of employment in October 2003 had the City not been using race as a hiring factor.  Therefore, as an equitable remedy, Mr. DeLeo is entitled to be hired in the next round of hiring barring any disqualifying criteria uncovered during the City's standard post-offer background checks and physical and psychological examinations.  Furthermore, as Mr. DeLeo was denied the opportunity to be hired in October 2003 because of the Defendants' improper reliance on the consent decree, he is entitled to make-whole relief, to include backpay and seniority for

---

[2] They are Michael Lee [7], John Matthews [8], Matthew McKenna [8], John Gonsalves [9] Robert Stone [9], Denis McKeeney [9], Sylvester Egidio [10], Michael Dillon [10], and Matthew Carey [11].  Two female veterans who appear on the HRD Certification Report, [Pl. SOF, Ex. 26], list as "Not Reached" – Stephanie Healey [11] and Carrie Sloane [11] – were actually reached and selected off the simultaneous female certification, [Pl. SOF, Ex. 23 at 45], so they would not have competed with the Plaintiffs for the remaining spots.

[3] Though previous filings indicated that there were two individuals tied with Mr. DeLeo, one of those individuals, Sean Dennehy, did not sign the certification list and thus would not have been eligible for consideration.  [Pl. SOF, Ex. 23 at 14.]

retirement purposes.[4]  Finally, Mr. DeLeo should be granted emotional distress damages because of the demonstrated deprivation of his constitutional rights.

As a hearing will likely be required to determine the relief to be granted to the remaining Plaintiffs, see infra Part II(C), it seems appropriate to delay the calculations regarding Mr. DeLeo's damages until that time.

    B.    **The Remaining Named Plaintiffs Should be Given Offers of Employment to Join the Next Hiring Class, but if No Such Order is Immediately Forthcoming, the Court Should Allow a Period of Limited Discovery so that the Plaintiffs May Prove That They Would Have Been Hired Had the City Not Been Following the Castro Decree.**

        1.    The Court should make a finding that parity was reached as of March 2002 and order the City to hire all the remaining Plaintiffs.

In its November 23, 2004, Memorandum and Order, the Court declined to make a ruling regarding parity as of March 2002. As a finding of parity in March 2002 would affect the number of positions that would have been available to the Plaintiffs, the Court should make a specific finding of parity as of the March 2002 time frame. As argued extensively in previous filings, the Court should find that rough parity was achieved by March 2002 because there was less than one percent difference between the percentage of minorities in the City's population (38.26 percent) and the percentage of minorities in the entry-level ranks of the Department (37.39 percent) at that time.[5]  [See Pl. SOF ¶¶ 39 & 40.] Assuming the Court does find that parity was achieved by March 2002, as discussed infra this part, there would have been a

---

[4] Equity would also demand that Mr. DeLeo receive contractual seniority treatment dating back to the date he would have been hired. This remedy should be made available pending agreement between the City and the Boston Police Patrolmen's Association.

[5] Even using the multiracial approach suggested by the Commonwealth and Intervenors, the difference is only 2.73 percent between the City's minority population (40.12 percent) and the percentage of minorities in the entry-level ranks in the Department (37.39 percent). Rough parity has thus been achieved even using this calculation.

4

sufficient number of positions available to non-minority candidates such that all the named Plaintiffs would have had the opportunity to be considered and hired.

In March 2002, the City considered twenty-four (24) non-veteran minority candidates ahead of the Plaintiffs and hired twelve (12) such candidates. Had the City not been considering race in its hiring decisions, and assuming the results would have been the same for candidates who were later considered in October 2003, the ten (10) non-minority veterans who were hired in October 2003 would likely have been hired in March 2002.[6] That being the case, the City would have had at least ten (10) more positions to fill in October 2003 in addition to the minimum of three (3) positions that would have been available if parity had only been achieved by October 2003. See supra Part II(A). However, and importantly, these calculations assume that every non-minority veteran whom the City failed to consider in these hiring rounds would have actually been hired. The evidence indicates, however, that in this time frame, a veteran stood about a 50 percent chance of being disqualified or removed from consideration during the hiring process and thus would be non-selected.[7] Therefore, about four (4) of the remaining non-minority veterans were likely to be eliminated during the process as well, leaving more room for the City to consider non-veterans.

As these numbers indicate, were parity achieved as of March 2002, the tie group of non-veteran candidates who scored 100 on the exam would have been reached for consideration for thirteen (13) positions at the very least. That being the case, all the remaining Plaintiffs would have been reached for consideration, and there would have been enough positions for each of

---

[6] They are: Robert Hurley [2], Michael Flaven [4], Douglas McGrath [4], Michael Paradis [5], Brian Barry [5], Frank Rossi [6], Michael Sullivan [6], Thomas Griffin [7], William Hubbard [7], and Matthew Smith [8]. [Pl. SOF, Ex. 26.]

[7] The HRD Certification reports show that in March 2002, twenty-four (24) veterans were considered and thirteen (13) were not selected. [Pl. SOF, Ex. 25.] In October 2003, nineteen (19) veterans were considered and eight (8) were not selected. [Pl. SOF, Ex. 23 & 26.] In total, twenty-one (21) out of forty-three (43) veterans were not selected, which amounts to 48.84 percent.

5

them to be hired. The Plaintiffs further assert that because of their particular backgrounds, education, and experience, the City was likely to consider and hire them from within the tie group, and thus the Plaintiffs are entitled to the same damages as Mr. DeLeo, discussed supra Part II(A). That is, the Plaintiffs should be awarded (1) a conditional offer of employment for the next class, subject to the City's post-offer hiring considerations, (2) backpay, (3) seniority for retirement purposes (and for other contractual purposes should the Boston Police Patrolmen's Association agree), and (4) emotional distress damages for the deprivation of their constitutional rights.

Should the City not agree to hire all of the Plaintiffs at this juncture, and should the Court be unwilling to order that they all be hired, the Plaintiffs request that the Court schedule an evidentiary hearing on the matter of remedy and allow a limited period of discovery so that the Plaintiffs may gather the evidence that would prove that they would have been hired by October 2003. See infra Part II(C) for details of the requested discovery period.

> 2. Even if the Court does not make a finding that parity was achieved in March 2002, the Plaintiffs are entitled to the opportunity to show that some or all of them would have been hired in October 2003.

As discussed above, supra Part II(A) and II(B)(1), the Court's November 23, 2004, order results at the very least in at least three (3), but likely seven (7) or more, positions that the Plaintiffs would have been considered for. In October 2003 alone, the City considered thirty (30) non-veteran minority candidates, all of whom scored lower than the Plaintiffs.[8] Had the City not used race as consideration and instead chosen a group of thirty (30) candidates based only on score, the Plaintiffs would all have been considered, since there were only thirty-two (32) candidates in the 100-scoring tie group who signed the certification list, and two (2) of those

---

[8] Since the City considered twenty-four (24) minority non-veterans in March 2002, any of the five minority candidates who scored 100 would have been considered at that time. [See Pl. SOF, Ex. 24.]

6

candidates were considered and hired off of the female certification. [See Pl. SOF, Ex 9 at 14-21 & Ex. 23 at 45-46.] Had the City considered all of the Plaintiffs, it would have given all of them a conditional offer of employment and would only have disqualified them had they failed one of the established post-offer background and medical checks. The City should therefore give each of the Plaintiffs an offer of employment for the next hiring class.

Were the Court to restrict the remedy to only the number of positions that were actually *hired* ahead of the Plaintiffs, the Plaintiffs must request that the Court schedule a hearing on the matter of remedy and allow a limited period of discovery so that the Plaintiffs may gather the evidence that would prove that all or some of them would have been hired by October 2003. See infra Part II(C) for details of the requested discovery period. The Boston Police Department's Human Resources Director testified that when it reaches a large tie group, the City uses its discretion to determine who would be considered. [Pl. SOF ¶ 21, citing Callahan Depo. at 111-12, 127.] The Plaintiffs must therefore engage in discovery to determine how the City would have exercised its discretion in these circumstances.

    C.    Should the Plaintiffs Not Receive a Remedy at This Juncture That Includes an Offer of Employment, the Court Should Schedule an Evidentiary Hearing on the Matter and Allow for a Limited Period of Discovery.

As established in the preceding sections, the Plaintiffs can prove that they would have at the very least been reached for consideration by October 2003 and can establish theories of equitable remedy that would allow the Court immediately to order that the City hire all of the Plaintiffs. In that eventuality, the Court may need to schedule a brief hearing on the issues of backpay and other make-whole relief for the Plaintiffs. In addition, should the Court not issue a hiring order at this time because of any lingering questions regarding whom the City would have

7

hired, the Plaintiffs assert that further proceedings will be necessary to determine whether all or some of the Plaintiffs would have been hired and what the damages should be.

Prior to such a proceeding, the parties must be allowed to engage in some limited discovery, which should be carried out expeditiously, to gather the evidence necessary to determine whether the Plaintiffs would have indeed been hired. The Plaintiffs suggest that the Court set a two-month period for such discovery and limit that discovery to depositions and document requests on these limited issues.[9] At the conclusion of this discovery period, the Court should hold a bench hearing solely on the issue of remedies for the Plaintiffs. The Plaintiffs specifically waive their right to a jury hearing on this matter.[10]

Finally, as the Court has ordered an end to the <u>Castro</u> decree and has specifically declined to issue a prospective order regarding the Defendants' ability to use race in future hiring, the only remaining issue appears to be the equitable remedy for the Plaintiffs. As the interests of the Intervenors are unaffected by these remaining proceedings, the Plaintiffs assert that the Intervenors should not be entitled to participate in this discovery process or the hearing on equitable remedy for the Plaintiffs.

### III. CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court issue an order that the Plaintiffs all be hired in the next police officer class and that the Court schedule a brief bench hearing on the issue of backpay and other make-whole relief. Should the Court not be

---

[9] The City has moved for additional time to formulate a proposed remedy. The Plaintiffs do not believe such additional time is necessary. However, should the Court grant the City's request, the Plaintiffs should be allowed to engage in discovery during the period of delay so that the Plaintiffs will have access to the same material the City is considering in formulating its proposals.

[10] Should the Defendants raise any issues regarding changes to future hiring procedures to account for race, the Plaintiffs would demand to be heard on the matter because they are all currently eligible for consideration for positions with the Department and some of them could be on eligibility lists for years to come.

inclined to order that all the Plaintiffs be hired, the Court must at least order that Plaintiff DeLeo be hired and provide for a period of discovery and further proceedings to allow the remaining Plaintiffs to prove that they would have been hired by October 2003 but for the City's continued use of race in the hiring process.

                                           Respectfully submitted,

                                           PAUL DELEO, JR., THOMAS BARRETT, MICHAEL CONNEELY, MATTHEW HOGARDT, BRENDAN DEVER, PATRICK ROGERS, CHRISTOPHER CARR, and BRIAN DUNFORD,

                                           By their attorneys,

                                           /s/ Alfred Gordon
                                           Harold L. Lichten, BBO #549689
                                           Alfred Gordon, BBO #630456
                                           Pyle, Rome, Lichten & Ehrenberg, P.C.
                                           18 Tremont Street, Suite 500
                                           Boston, MA 02108
Date:  December 8, 2004                (617) 367-7200

## CERTIFICATE OF SERVICE

I hereby certify that, in addition to being electronically filed, a true copy of the above document was served on the attorneys of record for each party by U.S. Mail on December 8, 2004.

                                           /s/ Alfred Gordon
                                           Alfred Gordon