UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL DELEO, JR., THOMAS BARRETT, MICHAEL CONNEELY, MATTHEW HOGARDT, BRENDAN DEVER, PATRICK ROGERS, CHRISTOPHER CARR, BRIAN DUNFORD, and DONALD WIGHTMAN<br>    Plaintiffs<br><br>v.<br><br>CITY OF BOSTON, Massachusetts; RUTH BRAMSON, in her capacity as Chief Human Resources Officer of the Commonwealth of Massachusetts; and COMMONWEALTH OF MASSACHUSETTS,<br>    Defendants,<br><br>BOSTON BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE and MASSACHUSETTS ASSOCIATION OF MINORITY LAW ENFORCEMENT OFFICERS,<br>    Intervenors. | Docket No. 03-12538-PBS |

PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF BOSTON'S
OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

**I.   INTRODUCTION**

With leave of the Court, the Plaintiffs, Paul DeLeo, Jr., Thomas Barrett, Michael

Conneely, Matthew Hogardt, Brendan Dever, Patrick Rogers, Christopher Carr, Brian

Dunford, and Donald Wightman, hereby submit this reply brief, together with supporting

1

evidence, in response to the Defendant City of Boston's Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs.

In support of their submission, the Plaintiffs note that the City's attempts to reduce the number of hours in the lodestar calculation and/or to reduce the lodestar amount by a certain percentage lack any substantial foundation and must be rejected. Moreover, the prevailing rates for attorneys in Boston are well above those requested by the Plaintiffs in this matter, so the Plaintiffs original request for fees should be granted in its entirety.

## II. DISCUSSION

### A. <u>Calculating the Lodestar</u>[1]

#### 1. The Hours Expended Were Reasonable.

##### a. Duplicative Hours.

In asking the Court to exclude certain hours Plaintiffs' counsel spent working together in preparing and taking depositions, the City essentially asserts that it is "duplicative" for attorneys to collaborate in this way. The City's reliance on <u>Grendel's Den v. Larkin</u> for this proposition is misplaced, as in that case, the First Circuit held only that where two senior attorneys were present during oral argument but only one addressed the court, the observing attorney's claim should be reduced from 19 hours to 8 hours. 749 F.2d 945, 952-53. <u>Grendel's Den</u> does not in any way suggest that attorney cooperation is improper; at most, it holds that an attorney can only receive partial fees for passively observing another attorney's oral argument. <u>Id.</u>

---

[1] The Plaintiffs are gravely concerned that the City would assert to this Court that the Plaintiffs did not confer in good faith in an attempt to resolve this issue. Plaintiffs' counsel take very seriously their obligation to confer in good faith regarding these matters and endeavored honestly to do so. However, Plaintiffs will not, as the City has done, divulge the nature and substance of the parties' settlement discussions even in an attempt to defend against these baseless allegations. Despite these troubling allegations, the Plaintiffs remain willing to engage with the Defendants in mediation to resolve the parties' current disagreement.

With regard to the deposition of Edward Callahan, as the City is well aware — since its counsel sat across the table from him — attorney Alfred Gordon did not merely "prepare for [the] deposition" of Edward Callahan, but also attended it, assisted attorney Harold Lichten in taking it, and controlled the numerous documents that were addressed in the deposition. With respect to Attorney Lichten's billing for 2.2 hours spent preparing for the deposition of Sally McNeely, that deposition involved a large number of documents and identical legal issues to those addressed in Attorney Lichten's deposition of Edward Callahan. It was therefore necessary and time-efficient for Attorney Lichten and Attorney Gordon to work together on this task for several hours to greatly reduce the amount of time it would have taken Attorney Gordon to prepare for the deposition on his own. For the City to insinuate that there is anything "duplicative" about this sort of collaboration is simply out of touch with both modern legal practice and the relevant case law in this Circuit. See Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 297 (1st Cir. 2001) ("Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic. …. Effective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working on a single issue"), citing Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998); Homier Distributing Co. v. City of New Bedford, 2002 WL 1586996 (D.Mass. 2002).

### b. Hours Attributable to the Commonwealth and the Intervenors.

The City cites no legal authority for its assertion that it "should not bear the burden of any fees or costs[2] that are wholly or partially attributable to other parties." [City's Opposition at 7.] This proposition has no basis in law and is contrary to the purpose of section 1988, which was enacted "to ensure 'effective access to the judicial process' for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Plaintiffs undertook this action to enforce important rights, and their time spent in litigation with all parties was reasonable and necessary to their ultimate success, so they are entitled to their fees and costs.

As an initial matter, the Plaintiffs did not file the motion seeking fees only against the City Defendants but rather against any party form whom fees might properly be obtained. However, courts in this Circuit regularly require principal defendants to bear fees arguably attributable to time spent responding to other parties when these efforts were a necessary part of the litigation. See Venuti v. Riordan, 702 F.2d 6, 8 (1st Cir. 1983) (denying city defendant's argument that the Commonwealth should pay fees awarded by the district court, stating, "After all, the city was the defendant; it lost the suit; and 42 U.S.C. § 1988 gives the court 'in its discretion' power to award 'the prevailing party' a 'reasonable attorney's fee as part of the costs' that a losing defendant must pay"); Kennelly v. State of Rhode Island, 682 F.2d 282, 282-83 (1st Cir. 1982) (upholding district court's order that state defendant pay fees for time spent in discovery against municipal defendants for which motions for directed verdicts had been granted); Parker v.

---

[2] In this section, Plaintiffs respond to the City's arguments concerning fees and costs attributable to non-City parties, as set forth in sections II(A)(1)(b) and II(B) of its Memorandum in Support of Defendant City of Boston's Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs (Opposition).

Town of Swansea, 310 F.Supp.2d 376, 394 (D.Mass. 2004) (awarding fees for time spent in discovery with settling co-defendants).  In this case, Plaintiffs sought justice in the courts, pursued those defendants that seemed potentially liable, and responded to intervenors as required by the rules of civil procedure.  It is well within this Court's discretion to award Plaintiffs all reasonable fees and costs associated with those efforts from whomever the Court finds to be responsible for those fees..

        **c.**        **Unnecessary Hours.**

Citing absolutely no case law, the City improperly contends that all hours attributable to work by and with the Plaintiffs' expert witness, Dr. Norman Aitken, should be eliminated from the lodestar calculation.  While it is true that the Court may, in its discretion, reduce the amount of fees awarded based on losing claims, see Culebras Enterprises Corp. v. Rivera-Rios, 846 F.2d 94, 103 (1st Cir. 1988), the Plaintiffs cannot be said to have lost the claim on which Dr. Aitken participated.  See also Alfonso v. Aufiero, 66 F.Supp.2d 183, 194 (D.Mass. 1999) ("[A]ttempts to allocate hours between claims may be unwarranted where an action involves related legal theories applied to a common core of facts.")

As an initial matter, it is hard to imagine how the Plaintiffs can be considered to have lost anything relating to the race discrimination claims Dr. Aitken worked on, since the Plaintiffs succeeded in having the Castro decree overturned and thereafter got full relief.  Moreover, in setting forth their race discrimination claim, the Plaintiffs advanced a number of interrelated legal theories, but there was still only one claim – that of race discrimination – and the Plaintiffs undeniably won on that claim.  In addition, had the parties not reached settlement as to relief, the Plaintiffs would have asked the Court to

reach the issue of the March 2002 hiring, in which Dr. Aitken's multi-race analysis would have strongly figured.

Because Dr. Aitken's testimony was an integral part of the Plaintiffs' successful race discrimination argument, all hours attributed to working with him are appropriately considered in the lodestar calculation.

### d.     Anticipated Fees.

At the outset, the Plaintiffs recognize that the City has not challenged the propriety of the Court awarding anticipated fees, and indeed, this Court has exercised its discretion to do so.  See Aufiero, 66 F.Supp.2d at 195.  In response to the City's concern that the amount of anticipated fees has not been properly explained, the Plaintiffs offer the following clarification.

In the aftermath of the similar litigation regarding the Boston Fire Department, Quinn v. City of Boston, 279 F.Supp.2d 51 (D.Mass. 2003), which was settled after judgment in a manner similar to the case at bar, Plaintiffs' counsel expended approximately ten (10) hours in responding to and resolving issues raised by the individual plaintiffs regarding the City's compliance with the settlement agreement.  There were a number of such issues in that case, including issues relating to pay rates, seniority calculations, and the City's application of the firefighter qualifications to the plaintiffs.  As of the time of the original fee petition in this case, Plaintiffs' counsel had already expended more than one hour on such matters, and this is prior to the Plaintiffs even entering the Academy.  [See entries for 2/2/05, 2/3/05, 2/17/05.]  Moreover, at the time of the original filing, Plaintiffs had not estimated any time for the defense of its fee petition. Attached hereto as Exhibits A and B are updated invoices reflecting the time spent thus far in responding to the City's lengthy opposition.

6

Based on the above considerations, the Plaintiffs should be entitled to at least ten (10) hours of anticipated fees.

### 2. The Hourly Rates Requested Are Reasonable.

#### a. Core vs. Non-core.

Though the City did heed the direction of the Court in relying on Alfonso v. Aufiero, 66 F.Supp.2d 183 (D.Mass. 1999), and Guckenberger v. Boston Univ., 8 F.Supp.2d 91 (D.Mass. 1998), the Plaintiffs contend that the practice of distinguishing between "core" and "non-core" work is unnecessary. Recent case law from the District of Massachusetts holds that "[w]hile this Court initially followed the 'core' versus 'non-core' distinction, … the Court changed its approach in System Management, where, after substantial analysis, it determined that once the appropriate hourly rate and number of hours reasonably expended are determined, the lodestar calculation will yield a presumptively correct result and that 'additional tinkering merely serves to double count some factors.'" Mogilevsky v. Bally Total Fitness Corp., 311 F.Supp.2d 212, 217 (D.Mass. 2004) (Young, C.J.) (applying a uniform hourly rate to all work performed in fee award), citing System Management, Inc., v. Loiselle, 154 F.Supp.2d 195, 209 (D.Mass. 2001) (recognizing that "the paucity of the intellectual underpinnings of this [core versus non-core] distinction has become apparent"); see also Homier Distributing Co. v. City of New Bedford, 2002 WL 1586996 (D.Mass. 2002) (finding the distinction inappropriate where a reasonable hourly rate has been set); Baione v. City of Boston, 2003 WL 79034 (D.Mass. 2003).

Furthermore, although the First Circuit has allowed the District Court to exercise its discretion in apportioning between core and non-core work, such apportionment has

7

always been discretionary, not mandatory. Horney v. Westfield Gage Co., 227 F.Supp.2d 209, 215 (D.Mass. 2002) (applying unified base rates and noting that "the First Circuit allows, but does not require, courts to employ either a unified base rate for all legal activities or separate rates differentiating between core and non-core work"), citing Brewster v. Dukakis, 3 F.3d 488, 492 n.4 (1st Cir. 1993); Maceira v. Pagan, 698 F.2d 38, 40-41 (1st Cir. 1983). Although it is presumably still permissible for this Court to apply the core/non-core distinction, doing so would be a departure from recent practice in this District and is unnecessary when a reasonable hourly rate can be determined.

Moreover, in challenging the hours attributed to core and non-core work outlined in the billing records, the City noted that the Alfonso court divided in half any mixed core/non-core entries it found. The Court divided such entries in half because it had no evidence on which to divide the entries differently. Alfonso, 66 F.Supp.2d at 197. However, the Plaintiffs are in the proper position to revise their time records by estimating the amount of time spent between different tasks and have done just that in creating the core/non-core records submitted with the original filing. See Wennik v. PolyGram Group Distribution, Inc., 304 F.3d 123, 134 (1st Cir. 2002) (approving this Court's exercise of discretion in accepting counsel's revised time records).

In response to the specific references the City challenges, the Plaintiffs have adjusted their invoice as follows:

| Date | Adjustment Made |
| --- | --- |
| 12/2/03 | 1.8 hours changed to non-core |
| 12/5/03 | 0.6 hours changed to non-core; 0.6 hours remain as core (research) |
| 12/22/03 | 1.2 hours changed to non-core |
| 1/2/04 | 1.3 hours changed to non-core |
| 1/6/04 | 0.75 hours changed to non-core; 0.75 hours remain as core (research) |

8

| Date | Adjustment Made |
|---|---|
| 1/9/04 | 0.7 hours changed to non-core; 0.7 hours remain as core (research) |
| 3/29/04 | No change – conversation with opposing counsel regarding legal issues involves independent legal thought. See Guckenberger, 8 F.Supp.2d at 101. |
| 5/11/04 | 0.4 hours changed to non-core |
| 5/19/04 | No change – conversation with opposing counsel regarding motion involves independent legal thought. See Guckenberger, 8 F.Supp.2d at 101. |
| 6/2/04 | 0.6 hours changed to non-core (research on current standing); 2.0 hours remain as core (attend court proceedings and meet with opposing counsel) |
| 6/9/04 | 1.8 hours changed to non-core |
| 8/4/04 | 0.4 hours changed to non-core |
| 8/6/04 | 0.8 hours changed to non-core; 0.2 hours remain as core (reviewing legal filings) |
| 8/10/04 | 2.9 hours changed to non-core |
| 8/16/04 | 0.5 hours changed to non-core |
| 8/18/04 | 1.2 hours changed to non-core |
| 8/19/04 | 1.3 hours changed to non-core |
| 9/28/04 | 0.2 hours changed to non-core (contact with client); 0.9 hours remain as core (reviewing legal filings) |
| 1/4/05 | 0.2 hours changed to non-core |
| 1/5/05 | 0.5 hours changed to non-core (contact with opposing counsel); 0.5 hours remain as core (reviewing stipulation) |

In addition, as noted above, the Plaintiffs have updated their invoices with hours expended in response to this filing. [Exhibits A & B.]

### b. Hourly Rates for Each Attorney.

#### i. Attorney Harold Lichten

In support of Attorney Lichten's requested hourly rate, attached hereto is the affidavit of noted Boston employment litigator Harvey A. Schwartz. [Exhibit C.]

The City's attempt to distinguish the two cases for which Attorney Lichten was awarded rates at or near that which he is requesting herein fail to account for any true distinctions. As this Court is well aware, Attorney Lichten's experience and success in cases regarding the so-called Castro and Beecher decrees certainly makes him an expert in

9

these matters and an authority in the field, and the $325 rate requested by Attorney Lichten is commensurate with his experience and expertise.[3]  See Guckenberger, 8 F.Supp.2d at 106 (finding $325 to be a reasonable hourly fee for prominent civil rights attorneys).  As Attorney Schwartz noted in his affidavit, firms in the area representing government defendants in civil rights matters charge $400 per hour for that work.  [Ex. C ¶ 5.] Attorney Lichten is thus justified in seeking a rate of $320 for his work on this case.

### ii.  Attorney Alfred Gordon

In support of Attorney Gordon's requested hourly rate, attached hereto is the affidavit of Boston employment litigator Robert S. Mantell, an associate in the office of Attorney Schwartz.  [Exhibit D.]

The cases cited by the City in challenging Attorney Gordon's requested rate are not directly on point.  The recent case cited by the City was a simple retaliation claim pursuant to Title VII and not a constitutional violation as found by the Court in this matter. Moreover, the City's attempt to distinguish Attorney Gordon's experience in labor law from the employment law issues in this case is misplaced.  As Attorney Gordon's affidavit makes clear, he worked as a litigator for the Federal Labor Relations Authority and was involved in several high-profile litigation matters representing the General Counsel of that agency.

Moreover, the bulk of the work involved in the case at bar was in researching and writing, and the billing records indicate that Attorney Gordon took a lead role in the drafting of the dispositive motions and memoranda in this case.  As his affidavit indicates, Attorney Gordon may be considered an expert in legal research and writing based on his

---

[3] To clarify paragraph 10 of Attorney Lichten's affidavit, in the Dahill case, Judge Woodlock indicated from the bench his approval of Attorney Lichten's then-requested $300 rate, and he eventually received that rate in a settlement agreement with the Defendant.

10

experience as a faculty member at Boston University School of Law teaching research and writing methods and his previous experience as a professional legal writer and editor. Attorney Gordon is thus justified in seeking a rate of $250 for his work on this case.

### iii.     Attorney Stephen Young

In defending this fee petition, the Plaintiffs have also utilized the services of Attorney Stephen Young.  Attached hereto as Exhibit E is the affidavit of Attorney Young, who is a 2000 graduate of Harvard Law School with several years of litigation experience. Based on prevailing rates in Boston for individuals with Attorney Young's educational credentials and experience, Attorney Young is justified in seeking a rate of $185 for his work on this case.

### 3.     Adjustment of Lodestar.

The City's suggestion that the Court reduce the lodestar amount based on the success and nature of this litigation and the role of the City lacks merit.

As an initial matter, the first factor cited by the City, the degree of success of the litigation, should in no way lead to a reduction in the lodestar.  The Plaintiffs consider the outcome of this case – the overturning of the Castro decree and the instatement of all the Plaintiffs – to be a complete success, as it achieved all the goals of the litigation.  Since the Court did not reach the issue of the March 2002 hiring, there is no way to know whether the majority of the Plaintiffs would have ultimately received the remedy that they attained, so the outcome may only be measured as completely successful.

The City's second assertion, regarding arguments that the Court rejected, similarly did not impact the ultimately successful outcome in this matter.  As the First Circuit has noted, hours spent on unsuccessful claims should only be excluded when such claims are

"distinct in all respects from [plaintiff's] successful claims." Figueroa-Torres v. Toledo-Davila, 232 F.3d 270, 278 (1st Cir. 2000) (upholding lower court's refusal to differentiate between claims brought against four different officers accused of beating plaintiff, even though only one was found liable); citing Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). Claims are severable and unrelated only "when the claims rest on different facts and legal theories." Id.; Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 339 (1st Cir. 1997). Here, the Plaintiffs ultimately prevailed on their main constitutional claim and got all the relief they could have hoped for.[4]

Finally, as argued above, supra part II(A)(1)(c), the Plaintiffs should not have their fee amount reduced due to the actions of other parties to this case. While the Plaintiffs applaud the City's efforts to resolve this matter as quickly as possible, the City could have agreed to the ultimate settlement in this matter without waiting for the Court to issue its ultimate judgment.

Therefore, the lodestar should not be adjusted in any way, because the Plaintiffs were fully successful in attaining the goals they sought to achieve through this litigation.

**B.    Costs.**

To the extent that the City challenges the allocation of costs attributable to other parties and to the Plaintiffs' expert witness, for the reasons outlined above, supra part II(A)(1)(b) & (c), the Plaintiffs assert that they are entitled to such costs. To the extent that the City challenges the copying and binding costs associated with the Plaintiffs' motion for summary judgment and preliminary injunction, the Plaintiffs note that their

---

[4] While it is true that the Court rejected the Plaintiffs' gender discrimination claim, a review of the filings demonstrates that the Plaintiffs spent very little time and effort advancing that claim. For example, only two paragraphs of argument in the Plaintiffs Memorandum supporting their Motion for Summary Judgment is devoted to the gender discrimination claim. Moreover, the success on the race discrimination claim got the Plaintiffs their entire requested relief.

12

Rule 56.1 Statement of Facts Not In Material Dispute was so voluminous that it could not be filed electronically. Attached as support for this cost assessment are the invoices from the duplication service related to the filing in question. [Exhibits F & G.]

## III.  CONCLUSION

For the reasons stated herein, the Plaintiffs respectfully request that this Court allow its motion for attorneys' fees and costs.

                         Respectfully submitted,

                         PAUL DELEO, JR., THOMAS BARRETT, MICHAEL CONNEELY, MATTHEW HOGARDT, BRENDAN DEVER, PATRICK ROGERS, CHRISTOPHER CARR, BRIAN DUNFORD, and DONALD WIGHTMAN

                         By their attorneys,

                             s/Alfred Gordon
                         Harold L. Lichten, BBO #549689
                         Alfred Gordon, BBO #630456
                         Pyle, Rome, Lichten & Ehrenberg, P.C.
                         18 Tremont Street, Suite 500
                         Boston, MA 02108

Date:  March 25, 2005             (617) 367-7200

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on the attorneys of record for each party by first class mail on March 25, 2005.

                             s/Alfred Gordon
                         Alfred Gordon